551 F.2d 2
 Robert FANTY et al.
v.
The COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC
WELFARE and Helene Wohlgemuth, Secretary of the
Department of Public Welfare of the
Commonwealth of Pennsylvania,
Appellants.
Eloise RANDLE, Appellant in No. 76-1968,
v.
Helene WOHLGEMUTH, Individually and as Secretary of the
Department of Public Welfare, Commonwealth of Pennsylvania,
Health and Welfare Building, Harrisburg, Pennsylvania, et
al., Appellants in No. 76-1969.
 Nos. 76-1924, 76-1968 and 76-1969.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 19, 1976.
Decided Feb. 8, 1977.
 
 Joseph M. Ludwig, Ludwig & Achman, Pittsburgh, Pa., for appellees in No. 76-1924.
 Jonathan M. Stein, Community Legal Services, Inc., Philadelphia, Pa., for appellant in No. 76-1968 and cross-appellee in No. 76-1969.
 Axel A. Shield, II, Asst. Atty. Gen., Michael von Moschzisker, Deputy Atty. Gen., Eastern Regional Director, Robert P. Kane, Atty. Gen., Philadelphia, Pa., for cross-appellants and appellants in No. 76-1924 and Nos. 76-1968 and 76-1969.
 Before SEITZ, Chief Judge, and HUNTER and GARTH, Circuit Judges.
 OPINION
 SEITZ, Chief Judge.
 
 
 1
 Plaintiffs are recipients of lump sum Social Security benefits. Defendants are officers and agents of the Pennsylvania Department of Public Welfare ("DPW"). Plaintiffs allege in their complaint that the manner in which DPW has attempted to collect their federal benefits in reimbursement of amounts granted under the state welfare laws amounts to invalid use of "legal process" within the meaning of 42 U.S.C. § 407 and the Supreme Court's interpretation of that act in Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1975).
 
 
 2
 The district court concluded that between January 10, 1973, the date on which Philpott was decided, and November 1, 1973, the effective date of a DPW internal memorandum which explained Philpott to DPW employees, DPW did in fact employ improper collection practices. However, the court also concluded that there was no evidence that DPW employed improper practices after November 1, 1973, "although it does continue to solicit or accept installment payments from welfare recipients who entered into reimbursement agreements prior to that date."
 
 
 3
 The district court realized that the Supreme Court's decision in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), precluded it from granting part of the relief sought, namely, the restitution of benefits wrongfully collected by DPW. Since the court found no evidence that DPW's current collection practices violate 42 U.S.C. § 407, it also refused plaintiffs' request for declaratory and injunctive relief. Plaintiffs have not appealed from these decisions to deny the relief they requested.
 
 
 4
 The district court did, however, itself design "limited prospective relief" for two subclasses: "(1) welfare recipients who are currently reimbursing DPW, on an installment basis, for claims established prior to November 1, 1973; and (2) all welfare recipients who may have pendent state law claims against DPW, i.e., persons who have made either lump sum or installment reimbursement payments to DPW since November 1, 1973, either because DPW coerced or misled them into making such payments or because the payment though voluntary was obtained in violation of DPW regulations which prohibit case workers from becoming involved in the collection process." The court ordered the defendants "to serve notice upon all identifiable members" of these subclasses "(1) that under Philpott they have no legal obligation to make reimbursement out of their federal disability benefits; and (2) that as a matter of state law they may have a cause of action against DPW." The court also ordered that the defendants later "file . . . a report which outlines the extent of compliance with the terms of this Order . . ."
 
 I.
 
 5
 The parties have raised several issues for this court's attention. But we need consider only whether Edelman v. Jordan, supra, prohibited the district court from requiring defendants to notify the designated subclasses of their Philpott rights, since we conclude that Edelman is dispositive of this case.
 
 
 6
 In Edelman, plaintiffs alleged that a state welfare regulation was in conflict with federal regulations and with the Fourteenth Amendment. The district court agreed, and ordered state officials to distribute benefits which had been withheld under the regulation and to comply prospectively with the applicable federal law. The Supreme Court, however, eliminated the requirement that the officials distribute funds which had been withheld, since it concluded that the Eleventh Amendment precluded the district court from granting such relief.
 
 
 7
 Like other recent Supreme Court decisions, Edelman indicates that the determination of whether relief is barred by the Eleventh Amendment and the doctrine of sovereign immunity depends upon two distinct inquiries: (1) whether the relief operates against the sovereign itself or only against an officer (2) whether any relief which does operate against the sovereign itself is permissible because the state has waived its general immunity from suit and its right not to be sued in federal court.
 
 
 8
 As the Supreme Court stated in Edelman, the line between relief which operates against the sovereign itself and relief which operates only against an officer is often difficult to draw. In some cases, courts may undoubtedly require state officials, in their role as state officials, to take or refrain from taking action. E.g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). However, at a minimum, the relief must be a "necessary consequence of compliance in the future with a substantive federal-question determination," and not a form of redress for a "past breach of a legal duty." 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662.
 
 
 9
 Under the standard just set forth, the district court's order must be considered to grant relief against Pennsylvania itself, and not merely the defendant officers.
 
 
 10
 In the first place, the order must be regarded as a grant of relief, and not as a measure adopted to supervise the conduct of the litigation, since the district court was attempting to make welfare recipients aware of their possible right to file state petitions for refunds. Second, while the district court was concerned about payments which federal beneficiaries might make in the future, this concern was motivated by its view of DPW's past, not current practices. The court considered "lawful" the manner in which DPW currently solicits funds from federal beneficiaries including those beneficiaries who are now entitled to notice. On the other hand, the court was concerned that DPW's past illegal practices might lead recipients who entered into reimbursement agreements prior to November 1, 1973 to make unwarranted installment payments in the future, especially given DPW's decision, not in itself illegal, to refrain from giving recipients notice of their rights. Thus, while plaintiffs requested relief for "all present and past" federal welfare recipients "who have been . . . or are subject" to DPW collection efforts, the court only granted notice to those who have been affected by past practices.
 
 
 11
 In sum, the court's order looks to a "past breach of a legal duty," and is not a "necessary consequence of compliance in the future with a substantive federal-question determination." Since it follows that the relief granted by the court operates against Pennsylvania itself, we must consider whether the order is permissible because the Commonwealth has waived its immunity from suit. Edelman makes clear that there has been no such waiver, since "the threshold fact of congressional authorization to sue a class of defendants which literally includes States is wholly absent," and Pennsylvania has not "consented to the abrogation of (its) immunity," 415 U.S. 651, 672, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662.
 
 
 12
 The order of the district court will be reversed, and the case remanded with a direction that the complaints be dismissed. The relief requested in No. 76-1968 will be denied.
 
 
 13
 GARTH, Circuit Judge, concurring.
 
 
 14
 I concur with Chief Judge Seitz that the order of the district court must be reversed and that the case must be remanded with instructions to dismiss the complaints. I have reached that conclusion, however, on grounds different from those expressed in Judge Seitz's opinion. I believe that the district court was required to dismiss the complaints because none of the named plaintiffs established the requisite of a case or controversy with the defendants.
 
 I.
 
 15
 Judge Seitz's opinion may well be correct in concluding that the relief ordered by the district court was barred by the Eleventh Amendment.[1] But, as Edelman v. Jordan, 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974), observed, "the difference between the type of relief barred by the Eleventh Amendment and that permitted under Ex Parte Young[2] will not in many instances be that between day and night." (Footnote added.) This case appears to involve such a "twilight" instance.
 
 
 16
 The Eleventh Amendment bars suits in federal court against officials of an unconsenting state "(w)hen the action is in essence one for recovery of money from the state . . . even though individual officials are nominal defendants." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). However, as Ex Parte Young, supra, made clear, the Eleventh Amendment does not prevent federal courts from enjoining state officials in all instances in which compliance with the injunction will require a substantial expenditure of state funds. As Edelman noted, the Eleventh Amendment permits injunctions against state officials which require the expenditure of state funds "as a necessary consequence of compliance in the future with a substantive federal-question determination." Id., 415 U.S. at 668, 94 S.Ct. at 1358. In other words, while the Eleventh Amendment precludes suits against state officials which require the expenditure of state funds in order to remedy a "past breach of a legal duty," id., it nonetheless permits injunctive decrees which are "prospective in nature" and which have the effect of requiring state officials to spend state funds "in order to shape their official conduct to the mandate" of the court. Id.
 
 
 17
 In this case, even a cursory examination of the notice proposed by the plaintiffs and ordered by the district court[3] leaves little doubt that the notice was intended primarily to alert those receiving it to the possibility of obtaining reimbursement from the Commonwealth for past payments illegally obtained by DPW. If the notice served that purpose alone, it would appear to be designed solely to remedy a "past breach of a legal duty" and might therefore be barred by the Eleventh Amendment. Contra, Lewis v. Shulimson, 534 F.2d 794, 795 (1976); Jordan v. Trainor, 405 F.Supp. 802, 804-07 (N.D.Ill.1975).
 
 
 18
 It may be argued, however, that the notice also served to prevent future violations by DPW. The district court found that DPW's practices violate 42 U.S.C. § 407 and Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), in two respects. First, the court apparently found that DPW employees, as a practice, "intentionally or negligently mislead welfare recipients into believing that they have a legal obligation to the Commonwealth where none exists." Slip Opinion at 5. Second, it found that DPW deliberately fails to inform persons who make reimbursements under agreements entered into prior to Philpott that they do not have "a legal duty to pay over their disability benefits." Slip Opinion at 6. It can be argued that the notice ordered by the district court sought to curb these practices by advising potential victims of their rights under Philpott. If the district court's order did in fact seek to achieve that objective, it would not be barred by the Eleventh Amendment.
 
 
 19
 I believe it is unnecessary and therefore inadvisable to decide the borderline Eleventh Amendment issue discussed by Chief Judge Seitz, since it is quite evident to me that the complaints should have been dismissed for yet another threshold reason. Specifically, I believe that the complaints "failed to satisfy the threshold requirement imposed by Art. III of the Constitution that those who seek to invoke the power of federal courts must allege an actual case or controversy." O'Shea v. Littleton, 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).
 
 II.
 
 20
 Article III, section 2 of the Constitution requires, of course, that individual plaintiffs who bring suit in their own behalf allege a case or controversy with the defendants they name. Named plaintiffs who bring suit on behalf of a class are not exempt from this requirement. "(I)f none of the named plaintiffs purporting to represent a class establishes the requisite of a case of controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, supra, at 494, 94 S.Ct. at 675. Thus, if the named plaintiffs in this case did not have an actual case or controversy with the defendants when this action was begun, their complaints must be dismissed. I turn then to that question.
 
 
 21
 In O'Shea the Supreme Court reviewed the meaning of the "case or controversy" requirement in Art. III, § 2:
 
 
 22
 Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.' Linda R. S. v. Richard D., 410 U.S. 614, 617 (93 S.Ct. 1146, 35 L.Ed.2d 536) (1973). There must be a 'personal stake in the outcome' such as to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' Baker v. Carr, 369 U.S. 186, 204 (82 S.Ct. 691, 703, 7 L.Ed.2d 663) (1962). . . .
 
 
 23
 Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct. Massachusetts v. Mellon, 262 U.S. 447, 488 (43 S.Ct. 597, 601, 67 L.Ed. 1078) (1923). The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' Golden v. Zwickler, 394 U.S. 103, 109-110 (89 S.Ct. 956, 960, 22 L.Ed.2d 113) (1969); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (61 S.Ct. 510, 512, 85 L.Ed. 826) (1940); United Public Workers v. Mitchell, 330 U.S. 75, 89-91 (67 S.Ct. 556, 564-565, 91 L.Ed. 754) (1947). (Footnotes omitted.)
 
 
 24
 In this case it is clear that, from the filing of the complaints to be present, the named plaintiffs have never had any "personal stake in the outcome" of this litigation. First, because of Edelman and the Eleventh Amendment, they never had a case or controversy cognizable in federal court for reimbursement of past payments made to DPW. While it is true, as the dissent notes, that Edelman was decided after the commencement of this action, that decision obviously had retroactive effect.
 
 
 25
 Second, the named plaintiffs never had a case or controversy regarding injunctive relief. DPW may have illegally collected money from them prior to the commencement of this suit, but "(p)ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing adverse effects." O'Shea v. Littleton, supra, at 495-96, 94 S.Ct. at 676; Rizzo v. Goode, 423 U.S. 362, 372, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). As noted above, the district court found that DPW's practices violated federal law because DPW employees implicitly and explicitly misrepresented the meaning of 42 U.S.C. § 407 to past welfare recipients who had received lump sum Social Security benefits. Since the named plaintiffs became fully aware of their rights under 42 U.S.C. § 407 and Philpott prior to filing their complaints, subsequent misrepresentations by DPW concerning those matters constituted no threat to them.[4]
 
 
 26
 Finally, the named plaintiffs never had a case or controversy for declaratory relief. Art. III, § 2 limits the issuance of declaratory judgments to cases in which " 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " Golden v. Zwickler, 394 U.S. 100, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969), quoting, Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 862 (1941). Since the only personal interest the named plaintiffs have ever had is the possibility of ultimately obtaining reimbursement through proceedings in a state forum, there was never any "immediacy" to their federal claims.[5]
 
 
 27
 In summary, since the named plaintiffs never had an actual case or controversy with the defendants, their complaints, which seek relief for themselves and for the classes they purport to represent, must be dismissed. See Boyle v. Madigan, 492 F.2d 1180, 1182 (9th Cir.1974).[6]
 
 III.
 
 28
 Plaintiffs have called our attention to several class actions in which federal courts have awarded relief similar to that ordered in this case. However, none of those cases provides persuasive support for the proposition that the named plaintiffs in this case had an actual present case or controversy with the defendants. In all those cases, with the exception of Jordan v. Trainor, 405 F.Supp. 802 (N.D.Ill.1975), the named plaintiffs were able to allege actual cases or controversies cognizable in federal court.
 
 
 29
 In Grubb v. Sterrett, 315 F.Supp. 990 (N.D.Ind.) (three-judge court), aff'd mem., 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed.2d 182 (1970), the named plaintiffs were mothers and dependent children who were denied Aid to Families with Dependent Children (AFDC) solely because the dependent children's stepfathers were present in the house. Grubb held that the Indiana regulation upon which the denial of assistance was based was in conflict with federal law. The court enjoined the state welfare department from denying future AFDC payments on that basis, and it ordered that persons denied AFDC because of the invalid regulation be notified of their rights under the court's decision. Thus in Grubb the named plaintiffs unmistakably had a "personal stake in the outcome" of the case, since it presumably made them eligible for future AFDC payments.
 
 
 30
 In Doe v. Gillman, 479 F.2d 646 (8th Cir.1973), the named plaintiffs were a woman and her minor daughter who were denied AFDC payments because of an Iowa statute which precluded assistance for dependent children whose parents were not cooperating in "legal actions and other efforts" to obtain support "from persons legally responsible for said support." The named plaintiffs in Doe v. Gillman thus had a significant "personal stake in the outcome" of the case, since their eligibility for future AFDC payments hung in the balance.
 
 
 31
 Similarly, in Lewis v. Shulimson, 534 F.2d 794 (8th Cir.1976), aff'g, 400 F.Supp. 807 (E.D.Mo.1975), the named plaintiff was denied federal Supplemental Security Income on the basis of various state regulations. Like the named plaintiffs in Grubb and Doe v. Gillman, the named plaintiff in Lewis alleged an actual case or controversy, because his eligibility for future benefits was at stake.
 
 
 32
 Jordan v. Trainor, supra which was Edelman v. Jordan on remand from the Supreme Court is similar to the instant case and dissimilar to Grubb, Doe v. Gillman, and Lewis. In Jordan, the named plaintiff was a recipient of Aid to the Aged, Blind, or Disabled whose application for assistance was not acted upon by state officials for almost four months after it was submitted. The plaintiff argued, and the Seventh Circuit held, that federal regulations required speedier action. The Seventh Circuit also affirmed the district court's award of injunctive relief and its order that the state reimburse members of the class for payments not made because of the prolonged period of processing. Jordan v. Weaver, 472 F.2d 985 (7th Cir.1973). In the Supreme Court, the award of reimbursements was reversed on Eleventh Amendment grounds, and the case was remanded. Edelman v. Jordan, supra. In Jordan v. Trainor, supra, the district court ordered state welfare officials to notify members of the plaintiff class that the delay in processing their applications had violated federal law and that they could apply for reimbursement in a designated state forum. Since the named plaintiff in Jordan v. Trainor, supra, could not derive any benefit from the notice ordered by the district court, he stood in a position quite similar to that of named plaintiffs in this case. Nevertheless, Jordan v. Trainor does not provide persuasive support for the proposition that a named plaintiff in that situation has a case or controversy with the defendants, since that issue was not discussed by the district court and apparently was never raised by the parties. I am confident in light of this analysis that had the court in Jordan v. Trainor, supra, considered the precedents and arguments presented to us, its result on this issue would not conflict with the one which I reach.
 
 IV.
 
 33
 Because I do not believe that the named plaintiffs have satisfied the threshold requirement of alleging an actual present case or controversy, I concur with the result reached in Judge Seitz's opinion that the district court order be reversed and that the case be remanded with a direction that the complaints be dismissed.[7]
 
 JAMES HUNTER, III, Circuit Judge, dissenting:
 
 34
 I respectfully dissent. The fragmentary state of the record in this case makes possible the various interpretations of the actions below, which are reflected in the three separate opinions of this panel. Because my interpretation differs from those of my brethren, and because the incomplete record in my view renders summary judgment improper, I would reverse and remand to the district court, so that this case could proceed to trial.
 
 I.
 
 35
 I am unable to agree with Chief Judge Seitz that the relief granted below looks solely to a "past breach of a legal duty" and is therefore improper under the doctrine of Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The district court apparently found that welfare recipients who had entered into reimbursement agreements before November 1, 1973, would continue to make payments under those agreements until they were told that the agreements were unenforceable. Chief Judge Seitz appears to draw a sharp line between the making of those agreements in the past and the collection under them in the present. In his view, the use of "legal process" proscribed by 42 U.S.C. § 407 and Philpott v. Essex County Welfare Board, 409 U.S. 416, 93 S.Ct. 590, 34 L.Ed.2d 608 (1975), occurred at the instant the contract was signed. Thereafter, according to this view, the Department of Public Welfare (DPW) merely collected money paid voluntarily, an action section 407 does not forbid.[1]
 
 
 36
 I can draw no line so sharp. If the initial agreement amounted to a use of "legal process" forbidden by section 407, then DPW continues to avail itself of that illegal process so long as it accepts payments from recipients who are unaware that those agreements are unenforceable. A contract is a document with continuing vitality, not an action that passes with the moment of signature. The unenforceability of these contracts has not extinguished their force: many recipients continue to make contractual payments because they have not been told that those contracts cannot be enforced. I cannot accept a distinction that categorizes entering the initial contracts as use of legal process, but does not include continuing receipt of payments made under the influence of those contracts as the same use of legal process.
 
 
 37
 In my opinion, current collection under illegal agreements constitutes a continuing violation of section 407. Therefore, notifying the class of persons making those payments that they need not do so is not relief directed solely to a "past breach of a legal duty," but is a "necessary consequence of compliance in the future with a substantive federal question determination." Edelman, supra, 415 U.S. at 668, 94 S.Ct. (1347) at 1358. As such, it is not barred by the Eleventh Amendment.[2]
 
 II.
 
 38
 Nor can I agree with Judge Garth that there is no justiciable case before us. Contrary to Judge Garth's statements, the named plaintiffs were members of the class that was certified on January 2, 1974: all those in the past, present, and future subject to DPW's Social Security collection policy and practices. Also, a live dispute did exist between the named plaintiffs and DPW: plaintiffs sought money damages for DPW's violations of section 407, as well as injunctive and declaratory relief. It was not until Edelman was decided, more than two months after certification of the class, that the district court's lack of jurisdiction to grant monetary relief became apparent. The concurring opinion suggests that it was also obvious that the named plaintiffs were not entitled to injunctive or declaratory relief. However, until the precise nature of DPW's allegedly improper collection practices was detailed (a task that, in my view, still awaits accomplishment), it was by no means inconceivable that the district court might grant injunctive or declaratory relief for example, declaring past and present collections illegal affecting the rights of the named plaintiffs.[3] In the end, the district court decided that the named plaintiffs were not entitled to such relief, a decision in which they by failing to press the point on appeal apparently acquiesce. But just because a court decides that the facts do not entitle a given plaintiff to the relief he requested, it does not follow that no "case or controversy" ever existed between him and the defendant. Other members of the class were granted a form of relief that did not implicate the named plaintiffs' legal rights, but I know of no requirement that a named plaintiff have a personal stake in every argument asserted on behalf of the class he was certified to represent. Therefore, the court below faced no Article III problems. The named plaintiffs were proper plaintiffs.
 
 
 39
 On appeal to this court, however, the named plaintiffs do not reassert their claims for declaratory or injunctive relief against DPW's collection practices. Instead, they content themselves with defending the propriety of the notification relief fashioned by the district court. This relief does not affect their legal rights, as the concurring opinion points out. The proper question, then, is not whether there was a live case or controversy at the outset of the litigation (for there clearly was), but whether the named plaintiffs, by apparently conceding that there is now no disposition of this case that could affect their rights as individuals, have mooted the case for all members of the class they were certified to represent.
 
 
 40
 The certification of the class profoundly affects our mootness inquiry. Sosna v. Iowa, 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).[4]
 
 
 41
 Given a properly certified class action, Sosna contemplates that mootness turns on whether, in the specific circumstances of the given case at the time it is before this Court, an adversary relationship sufficient to (sharpen the presentation of issues) exists. In this case, that adversary relationship obviously obtained as to unnamed class members with respect to the underlying cause of action . . ..
 
 
 42
 Franks v. Bowman Transportation Co., 424 U.S. 747, 755-56, 96 S.Ct. 1251, 1260, 47 L.Ed.2d 444 (footnote omitted) (class action not moot despite named plaintiff's loss of personal stake in the outcome). The case sub judice while apparently (through the named plaintiffs' failure to appeal the denial of further injunctive or declaratory relief) no longer alive as to the named plaintiffs, is very much alive as to a large though still indeterminate group of the persons the named plaintiffs were certified to represent. See Sosna, supra, 419 U.S. at 401, 95 S.Ct. 553. Thus, Franks, supra, teaches us that this case is not moot.
 
 III.
 
 43
 I would reverse, however, because I do not think that the requirements for summary judgment were met. Under Fed.R.Civ.P. 56(c), the district court can grant summary judgment only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The existence of cross-motions for summary judgment does not affect the requirement that the court find "no genuine issue as to any material fact."
 
 
 44
 Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists, it must be disposed of by a plenary trial and not on summary judgment.
 
 
 45
 Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3d Cir.1968). See 6 J. Moore, Federal Practice P 56.13 (2d ed.1976); 10 C. Wright & A. Miller, Federal Practice & Procedure § 2720 (1973).
 
 
 46
 The crucial issue of material fact in this case was the existence vel non of DPW's coercive activity with regard to obtaining reimbursement agreements from Social Security recipients. In granting summary judgment on plaintiffs' cross-motion, the district court evidently concluded that there was no genuine issue as to the "fact" that DPW engaged in a classwide "collection practice of giving recipients the false impression that they have a legal duty to pay over their disability benefits."
 
 
 47
 The record supports no such conclusion. Only four items bearing on this question appear on the record. First, the district court considered plaintiff Randle's affidavit detailing DPW's coercive activity with respect to the signing of her reimbursement agreement. The Commonwealth denied any wrongdoing in that episode and insisted and continues to insist that it was at any rate an isolated incident, not reflecting DPW practice in general.
 
 
 48
 Second, the district court had before it an admission by DPW's agent in charge of the Philadelphia Claim Settlement Office that it was not DPW policy affirmatively to inform all recipients of their Philpott rights. See Appendix to Brief of Appellant at 52A. This admission would be damaging, however, only if DPW was otherwise involved in actions violative of section 407. The district court found that failure to inform, by itself, was not improper. Thus, this admission is not evidence of the coercive practices found by the district court.
 
 
 49
 Finally, the district court cited two cases from the Pennsylvania Commonwealth Court, Wohlgemuth v. Armacost, 18 Pa.Cmwlth. 394, 336 A.2d 455 (1975), and Good v. Wohlgemuth, 15 Pa.Cmwlth. 524, 327 A.2d 397 (1974). In Armacost, the state court held that continued collection from a recipient who believed herself bound by a prior agreement, while refraining from telling her about the Philpott case, violated section 407. In Good, DPW was held to have violated its own regulations forbidding caseworker involvement in the collection process. Neither in their brief nor at argument in this case did the plaintiffs cite any authority for the proposition that the district court could take judicial notice of the findings of fact in those state court cases. In any event, those cases document only two more episodes of improper DPW activity, hardly an unshakable basis for concluding that the Commonwealth's denial of a widespread practice "verging on fraud" raised no genuine issue of material fact.
 
 
 50
 Thus, the district court concluded that DPW was engaged in a widespread practice of deceit with respect to an entire class when only three incidents of such impropriety were before it two of them perhaps not even properly and the Commonwealth denied the existence of other examples. I would disagree with the district court's legal conclusion that this was not a genuine issue of material fact and would remand for further proceedings in this matter, including the assembly of a record precisely detailing various incidents and practices allegedly violative of section 407.[5] We do not even know, for example, how many persons, if any, are continuing to reimburse DPW under agreements reached prior to November 1, 1973. In short, the present state of the record simply does not warrant a conclusion that there was no genuine dispute of material fact.
 
 
 51
 I would reverse and remand.
 
 
 
 [1]
 The Eleventh Amendment provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 While the terms of the Amendment refer only to suits against a state by citizens of another state or country, the Supreme Court has construed it to apply as well to suits against a state by its own citizens, Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 
 
 [2]
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)
 
 
 [3]
 NOTICE TO PERSONS WHO ARE PAYING OR WHO HAVE PAID MONEY TO DEPARTMENT OF PUBLIC WELFARE FROM SOCIAL SECURITY DISABILITY BENEFITS
 YOU MAY BE ENTITLED TO RECEIVE BACK MONEY THAT YOU PAID TO THE WELFARE DEPARTMENT FROM YOUR SOCIAL SECURITY CHECKS.
 Why?
 A federal court recently ruled in the Randle case that you were not and are not required by law to pay back your Social Security Disability.
 When?
 Refunds may be granted for any monies repaid to the Welfare Department after November 1, 1973.
 For What Reason?
 You may be entitled to the refund if you paid over the money because:
 
 
 [1]
 You were told to pay the money by an employee of the Department, and no one told you that you had a right to keep the money
 
 
 [2]
 Or, your caseworker actively took part in collecting the money
 How?
 In order to apply for your refund you must do the following:
 
 
 [1]
 File a fair hearing appeal with the Bureau of Hearings and Appeals of the Department of Public Welfare in Harrisburg
 
 
 [2]
 You may contact an attorney at your local Legal Services or Legal Aid Office, or Welfare Rights Organization who can ask for an appeal or hearing for you
 Deadline?
 You have 60 days from the date you receive this notice in which to request an appeal or hearing.
 Questions?
 If you have any question, immediately call your local Legal Services or Legal Aid Office or Welfare Rights Office.
 
 
 [4]
 Moreover, I believe that the complaints in this case must be dismissed because the named plaintiffs were not members of the classes they sought to represent. When the district court issued its opinion, it exercised its power under Fed.R.Civ.Proc. 23(c)(4) to subdivide the class into appropriate subclasses. It created the following two subclasses:
 
 
 [1]
 'welfare recipients who are currently reimbursing DPW, on an installment basis, out of their federal disability benefits for claims established prior to November 1, 1973,
 
 
 [2]
 all welfare recipients . . . who have made either lump sum or installment reimbursement payments to DPW since November 1, 1973, either because DPW coerced or misled them into making such payments or because the payment though voluntary was obtained in violation of DPW regulations which prohibit case workers from becoming involved in the collection process.'
 at 6.
 When subclasses are created, Fed.R.Civ.Proc. 23(c)(4) requires that each subclass be "treated as a class, and the provisions of this rule shall then be construed and applied accordingly." "This means that each subclass must independently meet the requirements of Rule 23 for maintenance of a class action . . .. Of particular importance is that the court must be certain that each subclass is adequately represented." 7A C. Wright & A. Miller, Federal Practice and Procedure § 1790 at 191-92 (1972). "A prerequisite of a properly maintainable class action under Fed.R.Civ.P. 23 is that the plaintiff representative be a member of the class which he purportedly represents." Davis v. Shultz, 453 F.2d 497, 500 n.12 (3d Cir.1971). See also Bailey v. Patterson, 369 U.S. 31, 32-33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1960); 7 C. Wright & A. Miller, supra, § 1759 at 573, § 1760.
 In this case, the named plaintiffs were not members of either of the subclasses created by the district court. Although the members of the two subclasses may have met the "case or controversy" requirement because they, in fact, may have been unaware of the Philpott decision announced on January 10, 1973 and their rights under that decision (which in turn could have given rise to the cause of action asserted here), the named plaintiffs can claim no such status. At all relevant times, the named plaintiffs, rather than being unaware of Philpott, were completely cognizant of that decision and the rights which it implicated. Therefore, since ignorance of Philpott is an essential characteristic of both subclasses, the named plaintiffs were not and could not be members of either subclass when they filed their complaints. As a result, this action cannot be maintained and dismissal is required, because one of the prerequisites of a class action named plaintiffs who are members of the classes they purport to represent was not satisfied. Fed.R.Civ.Proc. 23(a).
 
 
 [5]
 The dissent maintains that the named plaintiffs had a case or controversy for injunctive and declaratory relief when their complaints were filed and when the class was certified, because at those stages it was not "obvious that the named plaintiffs were not entitled to injunctive or declaratory relief." Dissenting Opinion at 4. However, under Art. III, § 2 "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." (Emphasis added) O'Shea v. Littleton, supra, at 494, 94 S.Ct. (669) at 675. Art. III, § 2 is not satisfied simply because it was not "obvious" when the complaint was filed or when the class was certified that the named plaintiffs had absolutely no personal stake in the outcome
 
 
 [6]
 The dissent relies upon Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), to support its argument that the complaints in this case need not be dismissed. I believe, however, that that reliance is misplaced. In Sosna, Franks, and the related case of Gerstein v. Pugh, 420 U.S. 703, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that class actions could go forward despite the fact that the claims of the named plaintiff had become moot. But in all those cases, unlike this one, the named plaintiffs unquestionably had real cases or controversies at the time when their complaints were filed. As I have indicated, this situation did not obtain here. I know of no authority which permits a class action to go forward even though the named plaintiff had no case or controversy with the defendant when the action was initiated
 
 
 [7]
 In my view, it would achieve nothing to return this case to the district court for purposes of trial as Judge Hunter would require. The threshold obstacles to which I have referred would still preclude relief. Even if these threshold problems were surmounted, I have grave doubts that any relief is available or could ever be afforded
 
 
 [1]
 Chief Judge Seitz notes that the district court considered DPW's present policy and practice with respect to reimbursement claims lawful. From this, the Chief Judge concludes that the district court found nothing wrong in any aspect of DPW's present collection practices and addressed its relief only to past wrongs
 I do not so read the district court's opinion. In my view, that court found nothing unlawful in DPW's practices with respect to beneficiaries other than those with whom agreements had been reached before November 1, 1973. The notice ordered by the court was directed at informing persons paying under agreements entered before that date that they could discontinue current and future payments, as well as at informing them of possible rights of recovery for past payments. This indicates that the district court believed that something was wrong with such collections.
 Even if the court below did believe that current collection under prior, unenforceable contracts was lawful, we would not be bound by that interpretation of section 407, which I would consider an incorrect conclusion of law.
 
 
 [2]
 There may be Eleventh Amendment problems with the portions of the form of notice that deal only with possible recovery of wrongful payments. In addition, those portions of the notice raise questions of state law with respect to the administrative channels to be used for seeking such recovery; there is some doubt about the ability of this court to resolve those questions at this stage of the proceedings. Because I would remand to the district court, however, I would not reach these problems. It would be sufficient at this stage to hold that the Eleventh Amendment does not deprive the district court of all power to grant relief in this case
 
 
 [3]
 The district court divided the entire class (of which the named plaintiffs were members) into subclasses (of which they were not) only for purposes of holding certain forms of relief legally available, not for the purpose of conducting the litigation. Indeed, as of the issuance of the court's order creating the subclasses, the litigation was at an end. Hence, the requirement of Fed.R.Civ.P. 23(a), that those suing on behalf of the class be members of the class, was met: the suit was brought and maintained to final judgment by members of the class certified. Rule 23(a) does not seem to address itself to the fashioning of relief, only to the conduct and maintenance of the suit. See 7A C. Wright & A. Miller, Federal Practice & Procedure § 1790 (1972)
 There may be a question of representative ability in some such cases, but none is raised here. Indeed, the only subclass that obtained any relief was the one with no named plaintiff as a member. Therefore, to require dismissal of the suit because of questions about the representation afforded that subclass would seem incongruous.
 
 
 [4]
 "When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by (the named plaintiffs)." Sosna v. Iowa, 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975)
 
 
 [5]
 The Commonwealth did not explicitly object to the propriety of summary judgment, but its insistence that Randle's affidavit is the only evidence of wrongdoing in the record serves to raise the question