**Brian TECH, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**The UNITED STATES of America, Defendants.**

No. 1:09–cv–47.

United States District Court, M.D. Pennsylvania.

Dec. 17, 2010.

Edward F. Foye, Todd & Weld LLP, Boston, MA, Robert Cynkar, Cuneo Gilbert & Laduca, LLP, Washington, DC, for Plaintiff.

Christopher J. Williamson, Geoffrey J. Klimas, Joseph E. Hunsader, Department of Justice, Tax Division, Washington, DC, for Defendants.

### *MEMORANDUM AND ORDER*

JOHN E. JONES III, District Judge.

Before the Court are the United States of America's Motion to Dismiss for Lack of

Jurisdiction (Doc. 66) filed on April 28, 2010 and the Plaintiff Brian Tech's ("Plaintiff" or "Tech") Motion for Class Certification (Doc. 71) filed on May 18, 2010. After full briefing, the Court held oral argument on the Motions on October 26, 2010. Accordingly, this matter is ripe for our review.[1]

For the reasons that follow, both Motions shall be denied.

## I. FACTUAL BACKGROUND

While the facts that give rise to this action are well-known to the parties and the Court, we shall repeat them herein for the benefit of the reader. Plaintiff paid for long-distance telephone service from March 1, 2003 to July 31, 2006. Plaintiff's monthly telephone bills included a three percent federal excise tax, which Plaintiff also paid.

Long-distance carriers filed tax returns and paid the excise tax due on the returns pursuant to 26 U.S.C. § 4252. For many years, Section 4252 had authorized a tax upon long-distance telephone service that is billed according to distance and elapsed time of the call. Over time, telephone companies changed their billing methods; by 2003, they no longer billed their long-distance customers' calls according to distance and elapsed time. This led various telephone customers to sue the United States, alleging that the three percent excise tax no longer applied. By early 2006, five Courts of Appeal agreed that the excise tax was no longer lawful for long-distance carriers that did not bill their long-distance customers' calls according to distance and elapsed time.

On May 25, 2006, the Internal Revenue Service ("IRS") conceded the tax was no longer lawful for long-distance carriers that did not bill their long-distance customers' calls according to distance and elapsed time, and issued Notice 2006–50. Notice 2006–50 instructed those long-distance carriers to stop collecting the tax on August 1, 2006.

Notice 2006–50 offered a procedure by which taxpayers could recover telephone excise taxes they had previously paid. The Notice Procedure provided that requests could be filed for refund of excise taxes wrongfully collected from March 1, 2003 through July 31, 2006. The Notice Procedure further stated that the requests should be made on taxpayers' 2006 federal income tax returns. For individuals filing a 2006 federal income tax return, the IRS included a line on the return to request a refund of the excise tax paid. For those individuals who were not otherwise required to file a 2006 income tax return, the Notice Procedure created Form 1040EZ–T, on which taxpayers could request a refund. Also, the Notice Procedure provided that if a taxpayer did not want to substantiate his or her claim to the excise tax refund, he or she could file for a safe harbor amount without providing documentation.

In January 2007, the IRS issued Notice 2007–11, which amplified and clarified the prior Notice. Notice 2007–11 set forth safe harbor amounts that ranged from $30 to $60 based on the number of dependents/exemptions in the taxpayer's household. Under this revised Notice Procedure, taxpayers who wished to request more than the applicable safe harbor amount could file Form 8913 with their 2006 federal income tax returns.

Plaintiff essentially alleges that because the IRS failed to provide him and his potential fellow class members with reasonable notice of the availability of the excise tax refund that complies with due process, the number of non-tax return filers who actually claimed a refund was extremely low. The Tax Inspector General estimated that the population of non-filers eligible for the refund was between 10 million and 30 million people. As early as August 2006, the IRS estimated that approximately 21.9 million to

---

1. We are cognizant of the Plaintiff's filing of Supplemental Authority (Doc. 97) on November 17, 2010, and the United States's response thereto in the form of a Motion to Strike the Supplemental Authority (Doc. 98), or alternatively, to be given an opportunity to respond. Having reviewed the case provided by the Plaintiff, *In re AT & T Mobility LLC Data Services Sales Tax*

*Litig.*, 270 F.R.D. 330 (N.D.Ill.2010), it is our view that it is not helpful to our consideration. However, we see no need to strike it from the record, particularly in view of the fact that the United States attached a response to the Supplemental Authority in their Motion to Strike, which the Court has reviewed. Thus, we shall deny the United States's Motion to Strike.

22 million of these people would fill out a form 1040EZ–T to obtain the refund. Given the $30 to $60 range of safe harbor amounts, which approximately 99% of taxpayers who sought the refund elected to take, these numbers show that the IRS expected to refund between $657 million and $1.3 billion of the projected 21.9 million non-filers filed the form 1040EZ–T. This estimate proved to be wide of the mark. As of the filing of the class certification motion, only about $26 million had been refunded to the approximately 700,000 tax payers that filed a form 1040EZ–T. Thus, the IRS has actually refunded only 2 to 4 percent of the money it originally expected to return to non-filers.

Plaintiff was not required to file a 2006 income tax return. Nor did Plaintiff file an administrative claim to recover the telephone excise tax, nor did he request a refund under the Notice Procedure. Plaintiff alleges that he and putative class members did not claim their refunds because they did not receive the constitutionally required notice that they were entitled to this refund, nor were they informed that they were required to file a new special tax form in order to be promptly paid the refunds. Plaintiff further alleges that the Government had the ability to readily identify the Non–Filers, and has demonstrated such ability with mailings made in connection with the Economic Stimulus Act ("ESA"). It is this alleged failure to both identify and notify the Non–Filers that forms the factual predicate for Plaintiff's claim.

Plaintiff asserts a single claim for a violation of due process and seeks equitable relief that will require, *inter alia,* the Government to provide him and similarly situated Non–Filers with reasonable notice of their entitlement to a refund of the unlawfully collected excise tax, and of the existence of the special tax form needed to promptly obtain the refunds. In effect then, what Plaintiff now seeks is certification of a massive class action suit against the United States that involves a potential class numbering in the tens of millions, seeking recompense approaching a billion dollars.

## II. MOTION TO DISMISS

Prior to rendering a disposition on the Plaintiff's class certification motion, we must first consider the United States's motion to dismiss this action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and 12(h)(3), asserting that Tech lacks standing to maintain this civil lawsuit. In particular, the United State argues that: (1) Tech has suffered no injury in fact; (2) that there is no causal connection between any alleged injury and the conduct of the United States; and (3) assuming, arguendo, that Tech has suffered an injury in fact, a favorable decision would not redress his alleged injury.

The United States's position that Tech lacks standing to pursue this action rests on its allegation that "Tech has known about, and had the ability to use, the procedure for claiming any telephone excise tax overpayment since before filing suit." (Doc. 67, pp. 1–2). The United States supports this allegation with the following testimony given by Tech at his deposition:

Q: How did it come about that you contacted any law firm with respect to this lawsuit?

A: A family member found some information on it, and I needed a lawyer ...

Q: So am I right that some family member informed you something about the Telephone—the availability of the Telephone Excise Tax?

A: Um-hum.

...

Q: So tell me what your [relative] told you with respect to the Telephone Excise Tax.

A: She said a lot of people are getting taxed unjustly, and you might fall in the category of it because you're subsidized. Everything you have is given to you by either one government or the next, and these people can help you.

(Deposition of Brian Tech, 223:17–224:22, Doc. 67, Ex. B).

### A. Standing Requirements

 Article III of the United States Constitution limits federal courts' jurisdiction to "actual cases or controversies." *Ballentine v. United States,* 486 F.3d 806, 814 (3d

Cir.2007)(citing U.S. Const. art. III, § 2; *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). To establish standing, a plaintiff must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In the putative class action context, the lead plaintiff must have standing in his or her own right in order to maintain the lawsuit on behalf of the putative class members. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Fanty v. Com. of Pa., Dep't of Public Welfare,* 551 F.2d 2, 6–7 (3d Cir.1977).

### B. Discussion

■ As noted above, the United States's argument is based largely on its allegation that Tech knew about and had the ability to use the procedure for claiming the telephone tax prior to the filing of this lawsuit. Thus, the United States argues that Tech has not suffered an injury in fact, nor can a favorable decision redress any alleged injury, because he knew that he could receive the tax refund. We find this argument lacking in factual support, and therefore, unavailing.

Tech's claim is that he did not receive constitutionally appropriate notice of his ability to receive the telephone excise tax refund. The United States argues that the information Tech received from his relative robs him of standing because he had actual knowledge of the tax refund and his ability to obtain it. This argument entirely misses the mark. In our view, the fact that Tech received some vague information from a relative that he might have been taxed "unjustly" absolutely does not remove his standing to pursue this action. Again, it is important to note that Tech's claim is that he did not receive notice that comports with *due process.* The limited information Tech was told in idle conversation with a relative does not transform into constitutionally appropriate notice just because the United States wishes it was so.

We simply cannot find that Tech had the knowledge and ability to obtain the telephone excise tax refund based on the limited information given to him from his relative. Nor do we accept that Tech's standing was washed away when he was informed by his attorneys of the refund process or that Tech cannot be injured because he still could still apply for the refund using the Notice Procedure.[2] *See Weiss v. Regal Collections,* 385 F.3d 337, 345 (3d Cir.2004)(allowing putative lead plaintiffs to be "picked off at an early stage in a putative class action may waste judicial resources by stimulating successive suits brought by others claiming aggrievement.").

Thus, based on the foregoing, we find that Plaintiff does have standing to pursue this action. Accordingly, we shall deny the United States's Motion to Dismiss.

### III. CLASS CERTIFICATION

Having denied the United States's Motion to Dismiss, we now turn to a resolution of Plaintiff's Motion for Class Certification. Plaintiff requests that this Court enter an Order certifying the following class pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2):

All individual telephone excise taxpayers who are entitled to (but have not yet received) a refund of the telephone excise tax ("FET") paid by them between March 1, 2003 and July 31, 2006, and who the Internal Revenue Service ("I.R.S.") (a) has identified, in connection with the Economic Stimulus Act of 2008 ("ESA"), as persons who did not file a 2006 income tax return, and (b) has identified or can identify from government records as additional persons who did not file a 2006 income tax return (the "Class").

### A. Class Certification Standard Under Rule 23

■ A federal court may only certify a class for litigation if it determines, after a "rigorous analysis," that the party seeking class certification has met all of the prerequisites of Rule 23. *In re Hydrogen Peroxide*

---

**2.** To be sure, there is obvious confusion as to whether and when the expiration of the statute of limitations for using the Notice Procedure will occur. However, any discussion on that point is beyond the scope of this Memorandum and will be saved for another day.

456

*Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir.2008)(citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Beck v. Maximus*, 457 F.3d 291, 297 (3d Cir.2006)). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *Hydrogen Peroxide*, 552 F.3d at 320. Thus, the "requirements set out in Rule 23 are not mere pleading rules," and the class certification inquiry "requires a thorough examination of the factual and legal allegations." *Id.* at 316; *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 166 (3d Cir.2001). "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Hydrogen Peroxide*, 552 F.3d at 316.

To obtain class certification under Rule 23, Plaintiff must satisfy both the conjunctive requirements of subpart (a) and one of the requirements of subpart (b). Fed.R.Civ.P. 23; *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 596 (3d Cir.2009). The touchstones of subpart (a) are: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prods.*, 521 U.S. at 613, 117 S.Ct. 2231.

With respect to subpart (b), Plaintiff seeks certification under Rule 23(b)(2). Class certification pursuant to Fed.R.Civ.P. 23(b)(2) is warranted "where the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Where injunctive and declaratory relief are sought, "the dictates of Rule 23(b) are 'almost automatically satisfied ... What is important is that the relief sought by the named plaintiffs should benefit the entire class.' " *Inmates of the Northumberland County Prison v. Reish*, 2009 U.S. Dist. LEXIS 126479, *75 (M.D.Pa. Mar. 17, 2009) (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58–59 (3d Cir. 1994)).

■ However, before examining the Rule 23 requirements, "the Court must first consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Gates v. Rohm and Haas Co.*, 265 F.R.D. 208, 214 (E.D.Pa.2010)(citing *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). Courts consider "(1) whether there is a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) whether class membership has been defined 'in some objective manner.' " *Gates*, 265 F.R.D. at 214 (quotation omitted).

## B. DISCUSSION

■ Before our inquiry into the merits of the Plaintiff's class certification begins, we must address the issue of whether the class, as Plaintiff proposes it, is capable of identification. As noted by the Government, on the brief and at oral argument, while "[s]ome inquiry into individual records," is permitted to ascertain membership, the inquiry cannot be "so daunting as to make the class definition insufficient." *Sadler v. Midland Credit Management, Inc.*, 2008 WL 2692274, *3, 2008 U.S. Dist. LEXIS 51198, *10 (N.D.Ill. Jul. 3, 2008)(quotations omitted). A class is considered identifiable if all its members can be ascertained based on "objective criteria." *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D.Ill.2007) (citation omitted). In addition, "where nothing in the company's databases 'shows or could show' whether individuals should be included in the proposed class, the class definition fails." *Id.* at *5, 2008 U.S. Dist. LEXIS 51198 at *17 (quotations omitted).

■ The United States argues that neither it, nor any other entity, has records capable of determining membership in the proposed class. While it appears facially possible for the class to be identified through

the telephone carriers' records, inasmuch as the carriers remitted the tax to the I.R.S., this method, when examined carefully, is a practical impossibility. As the United States points out, there are several thousand long-distance telephone carriers operating nation-wide, and during the time period at issue, there were countless mergers, acquisitions and dissolutions of carriers. If not entirely impossible, retrieving all of the necessary records from this vast amount of entities, many of which are now obsolete or have been absorbed into different umbrella companies, is an incredibly herculean task. In our view, this type of inquiry is of such a "daunting" nature that it makes the class definition in-sufficient. *See Sadler,* 2008 WL 2692274 at *3, 2008 U.S. Dist. LEXIS 51198 at *10.

Tech heavily relies on the ESA list and other, unidentified "government records" as a means to determine the proposed class. Tech argues that because the IRS identified non-filers that received benefits from the Social Security Administration, Veterans Affairs and the Railroad Retirement Board in order to determine who was eligible for an ESA payment, it should be able to identify non-filers for the purpose of receiving the telephone tax refund. However, this route also presents difficulties. It is important to remember that the ESA list does *not* identify who had a telephone and who paid the tax subject to refund, but rather is a list of those who qualified to receive an economic stimulus check. While there is concededly some over-lap between those on the ESA list and those who did not file a 2006 tax return, the ESA list is plainly not an all-encompassing list that indicates whether an individual was not a 2006 non-filer eligible to receive the telephone tax refund.

We are not unsympathetic to the monumental difficulty faced by Plaintiff related to identifying the class. However, in our view, more precision in this regard is required. *See Haynes v. DeHart,* 2009 U.S. Dist. LEXIS 65742, *11 (N.D.Ill. Jul. 29, 2009)(denying class certification because the "court cannot know if there is an administratively feasible way to identify the class"). Tech, in effect, is assuring the Court of his ability to identify what he believes is a closely analogous group, but that does not solve the problem of properly identifying the class that he seeks to certify. While we recognize that the class, if and when defined, will be a vast and far-reaching group of individuals, we cannot certify the class as Plaintiff proposes, because we find that it is not sufficiently identifiable. *See Gates,* 265 F.R.D. at 214. While Tech's proposed definition may be the best he can do, it is simply not good enough.[3] Accordingly, the class certification motion shall be denied without prejudice.[4] In the event the Plaintiff can craft a sufficiently identifiable class under the dictates of Rule 23, he is free to file a future motion for class certification.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. 66) is **DENIED.**

2. Plaintiff's Motion for Class Certification (doc. 71) is **DENIED** without prejudice.

3. The United States's Motion to Strike Supplemental Authority (Doc. 98) is **DENIED.**

**3.** In reaching our conclusion, the Court is mind-ful of the *Dukes v. Wal–Mart Stores, Inc.,* 603 F.3d 571 (9th Cir.2010), cert. granted — U.S. ——, 131 S.Ct. 795, 178 L.Ed.2d 530 (2010) litigation and the criticisms of what are considered to be unbridled class actions suits that both drain judicial resources and diminish respect for the judiciary. Moreover, while we admire and respect the professionalism and advocacy of Plaintiff's counsel, we will add, at the risk of being indelicate, that if and when certification occurs, the overarching and ultimate potential

winners will be Plaintiff's counsel. Thus we will not and can not lightly make the leap to certification Plaintiff's counsel advocates for without far more precision than what has been presented to us by them.

**4.** While we recognize the parties have made other arguments in favor and against class certification, we see no need to reach the merits of these arguments in light of our denial of the motion based on Plaintiff's inability to sufficiently identify the class.