John JORDAN et al., Plaintiffs,

v.

James TRAINOR, Acting Director, Illinois Department of Public Aid, et al., Defendants.

No. 71 C 70.

United States District Court, N. D. Illinois, E. D.

Aug. 22, 1975.

Sheldon H. Roodman, Kenneth K. Howell, O.E.C. Neighborhood Legal Office, Chicago, Ill., for plaintiffs.

Wm. J. Scott, Atty. Gen., Richard P. Byrne, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

This case is now before the Court on remand from the decision of the United States Supreme Court in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 693 (1974), and the order of the Seventh Circuit dated October 29, 1974 to this Court, and pursuant to the motion of the plaintiffs to require notice to members of the plaintiff class.

The only remaining question in this case relates to fashioning the appropri-

ate relief, if any, to deal with defendant's illegal denial of public assistance benefits to the needy aged, blind, and disabled members of the plaintiff class, which consists of all needy aged, blind, and disabled persons who applied for Aid to the Aged, Blind and Disabled (AABD) at one of the offices of the Illinois Department of Public Aid between July 1, 1968 and April 16, 1971, and whose applications were illegally delayed in processing, and who, as a result, were illegally denied benefits to which they were entitled.

Upon finding that the plaintiff class was illegally denied benefits to which its members were entitled, the District Court, Judge Napoli presiding, entered a permanent injunction "to insure compliance, present and future, with the requisite time limitation," (*Jordan v. Swank*, 71 C 70, unpublished opinion, p. 2, February 4, 1972), and also ordered the state officials to release and remit AABD payments wrongfully withheld from those members of plaintiff's class, defined in the trial court's order to include:

> Those applicants who applied for AABD since the effective date of the regulations, July 1, 1968, and did not receive their initial check as required within the 30 day or 45 day (60 days for Aid to the Disabled as of January 1, 1971) limits. *Jordan v. Swank*, p. 3, *supra*.

The holding of the district court was affirmed by the Seventh Circuit in *Jordan v. Weaver*, 472 F.2d 985 (7th Cir. 1973), in an opinion in which the Court upheld the relief granted by the trial court and agreed that the "defendants, acting under color of state law, denied eligible welfare applicants timely assistance benefits to which they were entitled by federal rights, and held that the District Court properly ordered equitable restitution of the benefits wrongfully denied. *Weaver, supra*, at 994. Moreover, the Seventh Circuit held that the Eleventh Amendment to the Constitution did not deprive the federal court of jurisdiction

to order the defendants to pay assistance benefits illegally denied members of the plaintiff class.

In *Edelman v. Jordan, supra*, the United States Supreme Court reversed that portion of the Seventh Circuit's opinion which affirmed the District Court's order that retroactive benefits be paid by Illinois State officials. The Court held that, under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the prospective portion of the District Court's order which enjoined state public aid from failing to process applications within federal time limits, did not contravene the guidelines of the 11th Amendment. On the other hand, *Ex parte Young* did not, it continued, authorize ordering recovery from state funds of an accrued monetary liability. The test established by the Court in *Edelman*, for determining which claims against the unconsenting state are barred by the 11th Amendment and which are permitted, is whether the award is by its terms prospective in nature, even though its implementation may have fiscal consequences. This characterization avoided the labeling of relief as equitable or monetary, which the Court found to be of little analytical benefit, and focused on the substance of the relief awarded. An ancillary fiscal impact in conjunction with the state's compliance in the future with a court order was held to be permissible under the 11th Amendment. The Court also rejected the Seventh Circuit's theory that the State of Illinois had consented to suit for retroactive relief by participating in the federal AABD program, holding that such consent will be found to exist only where set out in explicit statutory language or overwhelming textual implication.

The question here is whether the relief requested by plaintiff is prospective in nature, notwithstanding the fiscal consequences of its award, or a retroactive award of monetary relief falling within the proscription of *Edelman v. Jordan, supra*.

■ The relief now requested by plaintiffs is neither one for retroactive monetary relief nor an injunction requiring the state to conform its conduct in the future to a set of standards. Rather, it involves only the sending of notices to members of the plaintiff class explaining their possible entitlement to retroactive benefits and the appropriate state administrative and appeals procedures to be followed in applying for those benefits. The requested relief, therefore, while related to possible retroactive benefits, is clearly not an award of those benefits. The plaintiffs contend that *Edelman* does not deprive this court of jurisdiction to grant the requested relief and cite authority in support thereof. The defendants argue that *Edelman* erects an absolute bar, based on the 11th Amendment, to any order related in any possible way to payment of retroactive benefits by the state, that no existing authority supports the Court's ordering the state to send notices, and that plaintiffs are estopped by their pleadings to seek state administrative remedies.

The following language from the Supreme Court's opinion in *Edelman* indicates its concern with the award by a federal court of direct retroactive monetary relief against a state, rather than orders requiring the state to change existing policy or to inform citizens of their rights under state and federal law, even when a monetary loss would occur therefrom:

> We do not read *Ex parte Young* or subsequent holdings of this Court to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled "equitable" in nature. The Court's opinion in *Ex parte Young* hewed to no such line.
>
> *　*　*　*　*　*
>
> But that portion of the District Court's decree which petitioner challenges on Eleventh Amendment grounds goes much further than any of the cases cited. It requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard. While the Court of Appeals described this retroactive award of monetary relief as a form of "equitable restitution," it is in practical effect indistinguishable in many aspects from an award of damages against the State. . . . It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the party of the defendant state officials.

The instant case involves the awarding of non-monetary relief but related to the possibility of securing, through the state administrative apparatus, benefits illegally withheld from members of the plaintiff class. This relief falls outside the area proscribed by the Supreme Court's *Edelman* opinion.

■ The Eleventh Amendment seeks to avoid the clash of federal and state sovereigns. In this respect, a distinction exists between compensating individuals directly and notice that relief may be available. Even if the latter ultimately results in a direct award of benefits, federal interference in such an award would be minimal. The Eleventh Amendment by its terms denies jurisdiction to federal courts only of suits against one state by citizens of another or by citizens or subjects of a foreign state. While this has been read to preclude federal courts from ordering payments by states of state funds, it has never been held to prohibit federal courts from fashioning other appropriate relief in suits in law or in equity between citizens of a state and officials of the same state, e. g., writs of habeas corpus, injunction, mandamus, etc. Nor,

do we believe, that it may be used by a state to keep secret the fact that a number of its citizens may, under established state procedures, have valid claims against it. Accordingly, we conclude that ordering the sending of notices is not barred by the 11th Amendment to the Constitution.

Among the courts addressing the precise issue before us, none has denied the motion to require the sending of such notices. In *Grubb v. Sterrett,* 315 F. Supp. 990 (N.D.Ind.1970), a pre-*Edelman* case, the court held a statewide welfare regulation to be contrary to the Social Security Act and, therefore, invalid under the Supremacy Clause. Because the state had provisions for hearings regarding corrective retroactive payments, the court did not grant the retroactive monetary relief; rather, it remanded the claim for back benefits to the Indiana Department of Public Welfare and required the state to send notices to members of the plaintiff class. This course obviated the Court's consideration of any 11th Amendment objection to its jurisdiction to award retroactive monetary benefits.

In *Doe v. Gillman,* 479 F.2d 646 (8th Cir. 1973), also pre-*Edelman,* the Eighth Circuit vacated a District Court decree requiring the Iowa Department of Public Aid to make retroactive payments on the ground that it was unnecessary to decide the 11th Amendment question, since the Iowa Department of Public Aid regulations specifically required the payment, following state administrative hearings, of benefits illegally withheld. It also upheld that portion of the District Court's order which held a section of the Iowa Code violated the Social Security Act and required the state to send a notice of eligibility to those previously denied benefits.

In *Morris v. Houston,* 0–250–73 C.A. (W.D.Mich. Oct. 18, 1974), the Court held that a Michigan Public Aid Department's regulation excluding the unborn child from the definition of a "dependent child" was contrary to the Social Security Act.[1] The Court recognized that *Edelman* precluded the retroactive payment of benefits, but, regarding the question of whether the Amendment barred the remanding of plaintiffs to state fair hearing procedures in order to recover benefits illegally denied, Chief Judge Fox held:

> The Court need not enter an order remanding the plaintiffs to state administrative procedures, because these procedures are available to them without such an order. . . . The Eleventh Amendment operates as a jurisdictional bar on this Court in limited circumstances, but the duties of the state remain intact and enforceable by other means than direct injunctive order by a federal court for the payment of retroactive benefits. The Court cannot presume that the state will violate its own regulations but should it do so, the aggrieved parties will certainly have an action in state or federal court.

The members of the plaintiffs' second subclass [needy pregnant women and their unborn children who applied for AFDC benefits in Michigan after the date of the injunction] cannot utilize the state procedures unless they are notified of their existence. Therefore the injunction to be issued will enjoin the defendants to inform the members of the plaintiffs' second subclass that they may apply for retroactive benefits through the state hearing procedure, and shall also give the members of the subclass precise information as to the means of application. In these and other particulars, the notice should follow the form and content required by state and federal regulations for similar notifications, due allowance being made for the special

---

1. The Sixth Circuit by order reversed *Morris v. Houston* on the legality of the "unborn child" exclusion, based on the Supreme Court's opinion in *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (March 18, 1975).

circumstances of this case. *Houston* at 15–16.

The foregoing cases clearly demonstrate that the 11th Amendment is no bar to the requested relief.

The cases cited by defendants in support of their position do not address the issue of notice. *Alcala v. Burns*, 494 F. 2d 743 (8th Cir. 1974), held that the 11th Amendment prohibited an award of retroactive payments. That Court, which also decided *Doe v. Gillman, supra*, based its holding on an earlier decision in which it directly resolved the question of whether the 11th Amendment bars retroactive relief. *Taylor v. Lavine*, 497 F.2d 1208, 1213 (2nd Cir. 1974) is inapposite, even though the Second Circuit considered plaintiff's appeal from the District Court's denial of retroactive payments, inasmuch as the Second Circuit reversed the District Court's finding that the New York regulations were invalid under the Social Security Act. In *Taylor v. Hill*, 377 F. Supp. 495 (W.D.N.C.1974) the District Court granted a preliminary injunction on the grounds, *inter alia*, that plaintiff would suffer irreparable harm resulting from the court's inability to award retroactive payments, where welfare benefits have been unlawfully withheld. *Barron v. Bellows*, 496 F.2d 1187 (5th Cir. 1974) simply denied retroactive injunctive relief and financial assistance to members of the plaintiff class. Similarly, *Owens v. Roberts*, 377 F.Supp. 45 (M.D.Fla.1974), in light of *Edelman*, granted defendant's motion to amend a judgment which had awarded retroactive benefits to members of the affected class. A more relevant consideration in *Owens* was the Court's determination of whether the state should be required "to identify the members of the affected class" for the purpose of "grandfathering" them into the Federal Supplemental Security Income program, which assumed responsibility as of January 1, 1974 for the state AABD program. The Court concluded that such a burden should not be placed on the state because of, *inter alia*, the inordinate expense and

extant alternative means of identification. It is noteworthy that the Court apparently assumed that the 11th Amendment would not bar such an order.

■ Defendants contend in a supplemental brief that the Seventh Circuit's denial of plaintiffs' request for declaratory judgment on remand and defendants' assertions before the Seventh Circuit, in opposition to plaintiffs' request, which argued that the 11th Amendment barred any type of relief pertaining to retroactive benefits, settled the question of whether the relief presently requested by plaintiffs is barred by the 11th Amendment. We disagree. The Seventh Circuit Order, pursuant to *Edelman*, only reversed the District Court's award of retroactive benefits and ordered the modification of the District Court judgment with respect to the retroactive entitlement of Illinois applicants for aged and blind benefits under 45 C.F.R. § 206.10. Even if the Court of Appeals had held that the *Edelman* decision bars the granting of declaratory relief regarding retroactive benefits, such a holding would not necessarily bar the relief now requested by plaintiffs.

Defendant's final contention is that plaintiffs are estopped by their pleadings to request that notices pertaining to the existence of state administrative remedies be sent out. It cites *Sinclair Refining Company v. Thompkins*, 117 F.2d 596 (5th Cir. 1941); *Jones v. Hopper*, 410 F.2d 1323 (10th Cir. 1969); *Hall v. U. S.*, 314 F.Supp. 1135 (N.D.Cal. 1970), in support of this contention.

The cases cited by defendant stand for the proposition that allegations of fact pleaded by a plaintiff are binding. In *Thompkins*, plaintiff's allegation that a small blaze existed when she threw kerosene on the fire, which led to an explosion, was conclusive of her contributory negligence. In *Hopper*, plaintiff's allegation that his termination was not a breach of contract was conclusive as to the non-existence of the contract. In *Hall*, plaintiff's allegations relating to

808

when he learned that his wife was sterile and that it allegedly resulted from negligent treatment by a military doctor was binding in determining whether his action was time barred.

■ In the instant case, plaintiffs' allegations that "[n]o adequate administrative remedy or remedy at law is available to the plaintiffs" are not factual assertions which would be binding on plaintiffs. Rather they are legal judgments. As such, they are subject to judicial scrutiny and do not fall into the category of allegations relating to objective phenomena or facts existing irrespective of an observer's interpretation. Even if the instant allegations were not distinguishable from those present in the authorities cited by defendant and even if we found that those allegations were binding upon the instant request, that finding would not have the effect of precluding the sending of notices, inasmuch as it is not inconsistent for plaintiff to maintain that "adequate" remedies are not available and simultaneously request that notices be sent regarding the existence of available albeit less than adequate remedies. In each of the cases cited by defendants the plaintiff's later position was inconsistent with the binding pleadings.

For the foregoing reasons, plaintiffs' motion to require the State of Illinois to send plaintiff class members notices regarding the existence of possible state administrative remedies is granted. In this connection, defendants have requested a stay of the effective date of our order pending appeal to the Seventh Circuit and ultimately, perhaps, to the United States Supreme Court. While it is logical that no notices should be sent until the validity of our order has been finally determined, we see no reason why the state should not currently compile the names and addresses of all members of the plaintiff class who would be entitled to such notice. There has been serious question raised as to whether the state has compiled and is maintaining the necessary records from which such a list could be prepared. The

claims here relate to the period July 1, 1968–April 16, 1971. In order to protect against any possible loss or destruction of the necessary records and to insure that notices can be sent out immediately in the event our order is approved, the state is ordered to prepare the list of names and addresses of the persons to whom such notice would be sent; but sending of the notices is stayed pending appeal. An appropriate order will enter.

### FINAL JUDGMENT AND INJUNCTION

This cause coming on to be heard pursuant to the order and mandate of the Seventh Circuit, and the motions of the parties, and the memorandum opinion of the Court issued August 22, 1975,

It is hereby ordered, adjudged, and decreed:

1. The plaintiffs' motion to require notice to members of the plaintiff class is granted.

2. The defendants' motion to deny plaintiffs' request for notice to members of the plaintiff class is hereby denied.

3. Paragraph 5 of the judgment in this cause entered on March 15, 1972, granting retroactive benefits to members of the plaintiff class is hereby vacated, and the following paragraphs are substituted in place thereof as paragraph 5.

The defendant James L. Trainor, Director, Illinois Department of Public Aid, his agents, employees, attorneys, and those in active concert and participation with them, are hereby enjoined, to notify each member of the plaintiff class (as defined below) that he has been denied assistance benefits, with the amount specified in each individual case, and that he may attempt to recover those benefits by signing a notice of appeal (which is to be enclosed therein, together with a return envelope) contesting the denial of those benefits, and returning it in the enclosed envelope. The defendants shall send to each member of the plaintiff class, except those persons

who previously were mailed written notice of the denial of said benefits, the notice attached hereto as Exhibit A. The notice of appeal to be sent to members of the plaintiff class is attached hereto as Exhibit B.

The members of the plaintiff class are defined as all applicants for Aid to the Aged, Blind, and Disabled (hereinafter "AABD") in the State of Illinois who applied between July 1, 1968, and April 16, 1971, and were determined eligible for AABD, as follows:

a) Aged and blind applicants whose first full AABD check was not mailed within thirty (30) days from the date of application. These persons may appeal the denial of AABD assistance for the period beginning with the thirtieth (30th) day from the date of application to the date the applicant's entitlement to AABD became effective.

(b)

(i) Disabled applicants who applied between July 1, 1968, and December 31, 1970, whose first full AABD check was not mailed within forty-five (45) days from the date of application. These persons may appeal the denial of AABD assistance for the period beginning with the forty-fifth (45th) day from the date of application to the date the applicant's entitlement became effective.

(ii) Disabled applicants who applied between January 1, 1971, and April 16, 1971, whose first full AABD check was not mailed within sixty (60) days from the date of application. These persons may appeal the denial of AABD assistance for the period beginning with the sixtieth (60th) day from the date of application to the date the applicant's entitlement became effective.

The defendant James L. Trainor, Director, Illinois Department of Public Aid, his agents, employees, and attorneys shall submit to the Court within sixty (60) days of this judgment the names and addresses of all members of the plaintiff class, and the amount of benefits denied in each individual case. The sending of the notices to each individual member of the plaintiff class, as required above, however, shall be stayed pending appeal, if any, of this cause.

The defendant James L. Trainor, Director, Illinois Department of Public Aid, his agents, employees, and attorneys, shall issue timely instructions to caseworkers, hearing officers, and other appropriate personnel consistent with, and in furtherance of, this final judgment and injunction.

EXHIBIT "A"

Date:

Illinois Department of Public Aid

NOTICE OF RIGHT TO APPEAL DENIAL OF BENEFITS

When you applied for Aid to the Aged, Blind, and Disabled in the period between 1968 and 1971, your application was delayed in processing. As a result of the delay, you were denied public assistance to which you were entitled in the amount of $_____. As a result of a federal court order, the Illinois Department of Public Aid is required to notify you of this denial of benefits, and is also required to inform you that you may file a notice of appeal challenging the denial of benefits. Enclosed herewith is a Notice of Appeal which you should complete and mail to the Illinois Department of Public Aid in the enclosed postage paid envelope, if you wish to appeal the denial of your benefits. This notice of appeal must be mailed within sixty (60) days from the date of this notice.

If you have any questions in connection with this matter, you may call the attorneys in the federal lawsuit who have been representing the class of aged, blind, and disabled persons who were illegally denied benefits. (Legal Assistance Foundation of Chicago, [312] 939-5940. Call Collect.)

EXHIBIT "B"

Illinois Department of Public Aid

NOTICE OF APPEAL

I, _____ of _____ _____,
　　　Appellant's Name　　　Street or RFD　　City　　　　County

Illinois _____ hereby appeal to the Illinois Department
　　　　Telephone Number

of Public Aid for a fair hearing because of the

　　　(X) action
　　　　　or　　　　(check one)
　　　( ) inaction

of the _____ County Department of Public Aid.

My reason for requesting a fair hearing is: (Please be as clear and specific as you can in stating the county department action (or inaction) from which you are appealing.)

　　　The department illegally delayed in the processing of my AABD
　　　application, and, as a consequence, denied me benefits to which
　　　I was and am entitled.

Your Case Number _____

Type of Program _____

| | |
|---|---|
| Please notify: | Appellant's Signature |
| Legal Assistance Foundation of Chicago | |
| Re: JORDAN Case | _____ |
| 64 East Jackson Boulevard | Date |
| Chicago, Illinois　60604 | |

* My race is: [ ] White; [ ] Negro; or [ ] Other

FOR AGENCY OFFICE USE: TO BE COMPLETED BY THE
COUNTY DEPT.

Date this Notice of Appeal received _____

Date of written or oral request for this hearing, if preceding this form _____

Date of Decision appealed from _____

Case Name _____ Case Number _____

NOTE: The county department will assist you in preparing the above form. Upon completion, file the notice with the county department, or with the Illinois Department of Public Aid, Hearing Officer, 209 West Jackson Blvd., Room 801, Chicago, Illinois 60606. You are entitled by law to a final decision on your appeal within 90 days from the time you requested the appeal, unless you have requested a delay of your hearing.

* Federal reporting requirement