**John JORDAN et al.,
Plaintiffs-Appellees,**

v.

**James L. TRAINOR, Director, Illinois
Department of Public Aid, et al.,
Defendants-Appellants.**

No. 75–1908.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1977.

Decided Oct. 19, 1977.

Wm. J. Scott, Atty. Gen., William A. Wenzel, Chicago, Ill., for defendants-appellants.

Sheldon Roodman, Leg. Assist. Foundation, Chicago, Ill., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, TONE, BAUER, and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

In 1971 plaintiffs filed this class action seeking declaratory and injunctive relief alleging failure of the Illinois Department of Public Aid to process applications for assistance under the Aid to the Aged, Blind and Disabled program (AABD) within the time limits prescribed by federal regulations. Plaintiffs sought to have entitlement attach at the end of the federal time limit. The district court in an unreported decision required by permanent injunction that defendants comply in the future with the time limits and awarded retroactive benefits. Upon appeal that judgment was affirmed. *Jordan v. Weaver*, 472 F.2d 985 (7th Cir. 1973). The Supreme Court granted certiorari, and in a five to four decision reversed upon Eleventh Amendment grounds so much of the decree which ordered retroactive payment of benefits found to have been wrongfully withheld but left undisturbed the purely prospective relief. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thereafter this court remanded the case to the district court. After remand, plaintiffs filed a motion for an "order requiring the defendants to notify the members of the plaintiff class of their possible entitlement to retroactive benefits and their right to apply for benefits within sixty days through the state's administrative procedures, and requiring said defendants to include with such notice a form returnable to the Department of Public Aid upon which such persons may indicate their desire to appeal." Over the defendant's Eleventh Amendment objections the motion was allowed. *Jordan v. Trainor*, 405 F.Supp. 802 (N.D.Ill.1975). The trial court's order set forth the form of the Notice of Right to Appeal Denial of Benefits to be used by the Department and the Notice of Appeal to be used by the applicant. On appeal of that order a panel of this court reversed holding that the Supreme Court in *Edelman* had interpreted the Eleventh Amendment to be a jurisdictional bar precluding any type of retroactive relief. *Jordan v. Trainor*, 551 F.2d 152 (7th Cir. 1977). A Petition for Rehearing In Banc was granted.[1]

The issue being reconsidered is whether or not the Eleventh Amendment bars the proposed limited use of the court's equitable power in these circumstances. Defendants do not urge upon us the view that there is no "case or controversy" as required by Article III, Section 2 of the Constitution. That problem was referred to by Judge Garth in his concurring opinion in *Fanty v. Commonwealth of Pennsylvania, Dept. of Public Welfare*, 551 F.2d 2 (3rd Cir. 1976). In the present case the trial court determined that the class included applicants who had applied for AABD since July 1, 1968, and whose applications were not timely processed as required by federal regulations. In its judgment, in addition to its award to applicants of past benefits withheld, the trial court held certain applicable state regulations to be invalid and granted a permanent injunction requiring compliance with the federal time limits for

---

1. United States District Judge Francis C. Whelan of the Central District of California was a member of the three-judge panel which decided *Jordan*. Judge Whelan did not, however, participate in this court's vote on plaintiffs' suggestion for rehearing in banc. See Fed.R. App.P. 35.

processing and paying AABD applicants. Only the retroactive award provision was struck down by the Supreme Court. The basic controversy did not disappear. The notice problem we now face is a related aspect of the class controversy controlled by the trial court's permanent injunction.

The specified notice required by the district court to be sent to members of the class stated in part that "you were denied public assistance to which you were entitled in the amount of $ . . . . . ." Enclosed with that notice was the other form, "Notice of Appeal," to be signed by the applicant and returned to the Illinois Department of Public Aid. That notice contained the language "The department illegally delayed in the processing of my AABD application, and, as a consequence denied me benefits to which I was and am entitled." We agree with the panel's opinion that

> The sending of the particular notice and the form of notice of appeal will order, in effect, the payment of state funds by retroactive award to the members of the plaintiff class for past action or inaction by the State of Illinois. In the form of notice to be sent, there is an admission by the State of Illinois that each member of the plaintiff class was "denied public assistance to which you were entitled" in an amount to be stated in such notice.

That admission was compelled by the order of the district court and appears to be a type of money judgment against the state. We agree that the district court's order controverts the Eleventh Amendment in this regard and cannot be sanctioned.

The objectionable content of the notice forms are not in keeping with the views expressed by the trial judge in his Memorandum Opinion to which they were attached. With those views, but not the forms, we agree.

■ The more delicate variation of that issue is the constitutionality of a mere explanatory notice to applicants advising them that there is a state administrative procedure available if they desire to have the state determine whether or not they may be eligible for past benefits. A simple returnable notice of appeal form could also be provided. Those notices would not be handicapped by any federal predetermination of state liability. The parties agree that there are or may be various defenses available to defendant which could be raised in the state proceeding. The federal court would in no way be involved in any determination of whether or not past benefits were in fact due from the state.

This court is not in agreement on the constitutionality of such limited relief as an adjunct to the purely prospective relief granted. Although we view it as a close question, we hold that in the context of this case a permissible notice may be fashioned within the strictures of the Eleventh Amendment. There is no longer a claim that the state has waived its constitutional protection under the Eleventh Amendment. It is likewise conceded that the state, not merely an officer, would be directly involved in any relief granted. We realize there is little or no supporting precedent directly in point to give us complete confidence in our view, but we shall examine what we find.

■ We look for guidance to *Edelman v. Jordan, supra.* As the Court pointed out, the rule "has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred . . . ." 415 U.S. at 663, 94 S.Ct. at 1356. *"Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] does not extend so far as to permit a suit which seeks the award of an accrued monetary liability which must be met from the general revenues of a State . . . ." *Id.* at 664, 94 S.Ct. at 1356. The Court also noted that the retroactive portion of the district court's order required "the payment of a very substantial amount of money." *Id.,* 94 S.Ct. at 1356. We learn also that the character of any relief ordered which may in practice resemble a money judgment payable out of the state treasury cannot be

changed or made acceptable by labeling it "equitable" in nature. *Id.* at 666, 94 S.Ct. 1347. What had been labeled "equitable restitution" was found to be indistinguishable in many aspects from an award of damages against the state. *Id.* at 668, 94 S.Ct. 1347.

The form of notice we envisage would not create a "liability" against the state. Whether a liability might result would be a matter for state determination, not the federal court. No federal judgment against the state would be created. Such a notice could not be labeled equitable restitution or be considered an award of damages against the state. The defendant makes no issue out of any incidental administrative expense connected with the preparation or mailing of the notice. It has suggested in the record that the notice could be included in the regular monthly mailing. The necessary information comes from a computer. There is no indication that the administrative expense would be substantial.

Looking further at *Edelman*, we see some suggestion that the Eleventh Amendment, even apart from *Ex parte Young*, may not be a total and complete bar so long as it does not constitute a retroactive award for damages to be paid by state funds. The Court commented that "we must judge the award actually made in this case, and not one which might have been differently tailored in a different case . . . ." 415 U.S. at 665, 94 S.Ct. at 1357. Similarly, the Court recognizes that "[a]s in most areas of the law, the difference between the type barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between night and day." *Edelman* specifically overruled three recent cases in which the Su-

preme Court had summarily affirmed district court judgments requiring state directors of public aid to make similar retroactive payments as were originally ordered in this case by the district court. Although the list may not be intended to be complete, there is no mention of the three-judge decision, *Grubb v. Sterrett*, 315 F.Supp. 990 (N.D.Ind.1970), summarily affirmed 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed.2d 182 (1971).[2] That decision provided for notice to members of the class whose applications for Indiana public assistance had previously been denied under a regulation subsequently held to be invalid. The notice was to contain no prejudgment of state liability. The state was left to make the eligibility determination according to federal and state regulations. The cases specifically overruled by the Court, on the other hand, provided for actual retroactive payments. Thus we deem the omission of *Grubb* from the cases specifically overruled to be of some significance. As we read *Edelman*, we believe that the case allows limited flexibility and does not foreclose the modified relief we approve.

Plaintiff cites *Doe v. Gillman*, 479 F.2d 646 (8th Cir. 1973), *cert. denied*, 421 U.S. 920, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), as post-*Edelman* authority which left in effect, after a partial reversal, a requirement that the Iowa Department of Social Services send notice of eligibility to applicants previously denied benefits. The court of appeals found it unnecessary to resolve the Eleventh Amendment issue of retroactive payments since the court assumed that Iowa would follow its own regulations and that any retroactive payments owing would be made. The record in this case does not suggest that we indulge in a similar as-

---

**2.** Footnote 13 of *Edelman* lists only the following cases:

   1) *State Dept. of Health and Rehabilitative Services v. Zarate*, 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803 (1972), aff'g, 347 F.Supp. 1004 (S.D.Fla.1971); 2) *Sterrett v. Mothers' and Children's Rights Organization*, 409 U.S. 809, 93 S.Ct. 68, 34 L.Ed.2d 70 (1972), aff'g unreported order and judgment

of District Court (N.D.Ind.1972) on remand from *Carpenter v. Sterrett*, 405 U.S. 971, 92 S.Ct. 1199, 31 L.Ed.2d 246 (1972); 3) *Gaddis v. Wyman*, 304 F.Supp. 717 (S.D.N.Y.1969) (order at CCH Poverty Law Rep. ¶ 10,506 [1968–1971 Transfer Binder]), aff'd *per curiam sub nom.*, *Wyman v. Bowens*, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970).

sumption to avoid a constitutional issue. Defendant dismisses *Gillman* both as a pre-*Edelman* case and because it avoids the Eleventh Amendment issue. Although the case was decided by the Eighth Circuit prior to *Edelman*, certiorari was denied by the Supreme Court after *Edelman*.

The plaintiff also cites *Lewis v. Shulimson*, 534 F.2d 794 (8th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1570, 51 L.Ed.2d 786. In that case notice was required to be given by the state to those in the class who had previously been denied medical assistance in violation of the court order. However, no retroactive payments were involved. The decree was prospective in nature. *Lewis* is only slightly related to the present problem.

The defendant has called to our attention the recent case of *Fanty v. Commonwealth of Pennsylvania, Dept. of Public Welfare*, 551 F.2d 2 (3rd Cir. 1977). In that case the state had for a prior period of time attempted to collect from recipients certain previously paid social security benefits as reimbursement to the state. The plaintiff class alleged that this had been accomplished in an illegal manner. The practice of the state had been terminated prior to suit but some applicants were still making reimbursement payments to the state under agreements entered into during the prior period. The district court did not attempt the restitution to applicants of benefits wrongfully collected by the state and denied declaratory and injunctive relief since current state practices were not in violation. The district court did, however, require the state to serve notice on two subclasses. Those welfare recipients who were currently reimbursing the state under the prior agreements were to be notified that they were under no legal obligation to continue making reimbursements out of their federal disability benefits. Those welfare recipients who had been previously coerced and misled into making reimbursements in violation of the regulations were to be notified that as a matter of state law they

might have a cause of action against the state. Each member of the appellate panel voted to reverse, but for varying reasons, Chief Judge Seitz was of the opinion that *Edelman* controlled since he viewed the district court's order as being "based on a past breach of legal duty" and granting relief not a "necessary consequence of compliance in the future with a substantive federal question determination." Judge Garth believed the Eleventh Amendment issue to be "borderline," but reversed on the basis that there was no case or controversy. Judge Hunter dissented, and rather than require dismissal of the complaints voted to reverse and remand on the grounds that the requirements for summary judgment had not been met. He disagreed that *Edelman* required dismissal and would draw "no line so sharp" between the past and present aspects of that case. He further disagreed with Judge Garth by finding there to be a justifiable case. There are some factual distinctions between that case and the present case, but they are not so significant as to avoid conflict in principle with our present decision on the Eleventh Amendment issue. Since Judge Garth considered the Eleventh Amendment issue a borderline question and Judge Hunter was of the view that the Eleventh Amendment did not bar the notice relief, although he also recognized some problems with the form of the proposed notice, we do not view that case as strong authority to the contrary.

If our task was only to enforce the federal regulations, use our equitable powers and heed the admonition of the 82nd Psalm to "Do justice to the afflicted and needy," our decision would not be so difficult. It appears that the needed list of applicants and information is already available from the state computers and that the administrative cost to the state of the contemplated modified notice procedure would not be significant. No judgment for any award of damages against the state comes from the federal court. The members of the class will be given no more by the proposed modified notice than what they would have gathered

by sitting in the courtroom or by reading and listening to news accounts had the case attracted any attention. As for the state, our decision means only that if an appeal be filed in the future by a class member, the state may determine for itself by its own procedures whether any back payment may be due the applicant. It cannot be strongly argued that the problem did not arise in part from a past breach. The district court rightfully curtailed the continuing breach as to the future by permanent injunction. What is now controlled by the permanent injunction and the proposed modified notice are all related and a part of the whole which affected the class. We believe a modified notice as suggested by this opinion is not barred by the Eleventh Amendment. We reverse and remand for additional proceedings not inconsistent with this opinion.

PELL, Circuit Judge, dissenting.

Being of the opinion that the constitutionally designated "inferior courts" who have vested in them the "judicial Power of the United States," should, in the orderly exercise of that vested power, refrain from attempting, no matter how artfully done, to accomplish by indirection that which has been specifically prohibited, particularly in the very litigation in which the prohibition was proclaimed, I respectfully dissent. The fact that the result may appear desirable from a societal point of view should play no part in the decision.

The case before the panel of this court, reported at 551 F.2d 152, involved, in my opinion, such an effort at indirection. The en banc majority opinion agrees that the panel properly struck down as violative of the Eleventh Amendment the order of the district court. The validity of that order was all that was presented to the panel for decision. The en banc majority opinion then proceeds to attempt to prescribe a constitutionally inoffensive form which the state authorities would be required to send to those persons precluded by the Supreme Court decision from collecting by direct judgment the very amounts which would be involved in the notices to be sent.

The Supreme Court in reversing the first order of the district court as affirmed by this court did so on the basis that the order would result in a situation which "is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials," 415 U.S. at 668, 94 S.Ct. at 1358.

Now, notwithstanding laundering efforts in this court, the refined order outlined in the en banc majority opinion will still upon any realistic analysis, result in a situation which "is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials."

This court, in my respectful opinion, should not lend its hand to such subterfuge.

TONE, Circuit Judge, dissenting.

Judge Wood's opinion for the court presents an appealing solution to the Eleventh Amendment problem. In my view, however, the Supreme Court's decision that a federal court may not retroactively enforce the plaintiffs' rights against the state, Edelman v. Jordan, 415 U.S. 651, 658 et seq., 94 S.Ct. 1347, 39 L.Ed.2d 662, (1974), precludes us from entering an order aimed solely at retroactive enforcement, albeit in another form.

BAUER, Circuit Judge, dissenting.

I join in the dissents of Judges Pell and Tone.