**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF LINCOLN, a corporation, Appellee,**

v.

**Burke E. CASARI, individually and as Director of the Section of Hospital and Medical Facilities of the Nebraska Department of Health; Henry D. Smith, individually and as Director of the Nebraska Department of Health, Appellants.**

No. 81–1284.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1981.

Decided Jan. 6, 1982.

---

Paul L. Douglas, Atty. Gen., Marilyn B. Hutchinson, Asst. Atty. Gen., argued, Lincoln, Neb., for appellants.

John R. Holdenried, argued, Baird, Holm, McEachen, Pedersen & Hamann, Omaha, Neb., for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and OLIVER,* Senior District Judge.

STEPHENSON, Circuit Judge.

Appellants, defendants in the court below, Burke E. Casari, Director of the Section of Hospital and Medical Facilities of the Nebraska Department of Health, and Henry D. Smith, Director of the Nebraska Department of Health, seek to overturn the district court's [1] order imposing declaratory and injunctive relief upon them in both their individual and administrative capacities stemming from their review of the plaintiff's, First Federal Savings and Loan Association of Lincoln, health care proposal submitted under section 1122 of the Social Security Act, 42 U.S.C. § 1320a–1 (1976 & Supp. II 1978). Because we find that the defendants were altogether without authority to act upon this proposal, we both affirm in part and reverse in part the judgment of the district court.

I.[2]

Section 1122 of the Social Security Act, provides:

---

* The Honorable John W. Oliver, United States Senior District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. The case was submitted to the district court upon a stipulated record.

to assure that Federal funds appropriated under subchapters V, XVIII, and XIX of [the Social Security Act, 42 U.S.C. §§ 301 et seq.] are not used to support unnecessary capital expenditures * * * which are reimbursed under any of such subchapters and that, to the extent possible, reimbursement * * * shall support planning activities with respect to health services and facilities in the various States.

42 U.S.C. § 1320a–1(a) (Supp. II 1978). The statute and regulations promulgated thereunder, 42 C.F.R. §§ 100.101–100.109 (1980), establish a comprehensive system of coordinated state and federal review of proposed health care capital expenditures through which qualifying institutions can receive federal reimbursement for capital expenditures. Under this system, the Secretary of Health, Education and Welfare (now Health and Human Services) [hereinafter cited as Secretary] is authorized to enter into an agreement with individual states to provide for local review of all proposed reimbursable health care capital expenditures in order to assess conformity with local standards, criteria or plans developed to meet the need for adequate health care facilities in the state.[3] 42 U.S.C. § 1320a–1(b) (Supp. II 1978). Additionally, the agreement is to provide for specific notification and review procedures for subject proposals, such procedures to be established and maintained by the individual states. 42 C.F.R. § 100.106(a)(1) (1980). Within each cooperating state, a designated planning agency (DPA) is established to review each capital expenditure proposed by a health care facility and submit all findings and recommendations thereon to

the Secretary. 42 U.S.C. § 1320a–1(b)(1) (Supp. II 1978). Adverse findings and recommendations of the DPA may be appealed and an opportunity for a fair hearing granted to any person proposing such a capital expenditure. Id. § 1320a–1(b)(3). However, to the extent that the findings and recommendations of the designated appeal agency reverse or revise those of the DPA, the appeal agency's findings shall supercede those of the DPA. 42 C.F.R. § 100.106(c)(4) (1980). Furthermore, although the statute is silent on this point, the regulations provide that where judicial review of the appeal agency's decision is obtained, the judicial decision obtained thereby shall also supercede the findings and recommendations of the DPA. Id.

The DPA may find that a proposed capital expenditure is either in conformance or nonconformance with the applicable local standards, criteria or plans. Id. § 100.-106(a)(4). It may also elect not to review a proposal. Such an election, however, is deemed equivalent to a finding of conformity, the report of which to the Secretary must identify the reasons for such nonreview.[4]

Where the DPA finds and so notifies the Secretary that a proposed capital expenditure does not conform to local standards, the Secretary is authorized to exclude from federal health care reimbursements to the facility any amount attributable to depreciation, interest on borrowed funds, return on equity or other capital expenditures related to the proposed expenditure. 42 U.S.C. § 1320a–1(d)(1) (1976 & Supp. II 1978). Even despite a notice of nonconformity, however, the Secretary may nevertheless decide not to exclude these capital expendi-

---

3. The local standards, criteria or plans shall include the following criteria:

    (a) Whether the proposed project is needed or projected as necessary to meet the needs in the community in terms of health services required * * *;

    (b) Whether the proposed project can be adequately staffed and operated when completed;

    (c) Whether the proposed capital expenditure is economically feasible and can be accommodated in the patient charge structure

of the health care facility * * * without unreasonable increases; and

    (d) Whether the project will foster cost containment or improved quality of care through improved efficiency and productivity * * *.

42 C.F.R. § 100.107 (1980).

4. The failure of the DPA to notify the proponent within the prescribed period is also deemed a determination of conformity. Id. § 100.106(a)(4).

tures from federal reimbursement where sufficient proof of capability to provide efficient, effective and economical delivery of health care is demonstrated. *Id.* § 1320a–1(d)(2) (Supp. II 1978). The Secretary's final determination is not subject to administrative or judicial review. *Id.* § 1320a–1(f).

Section 1122 was enacted on October 30, 1972, and became effective on December 31, 1972. Thereafter, an agreement was entered into between the Secretary and the state of Nebraska on February 27, 1973, designating the Section of Hospital and Medical Facilities of the Department of Health as the designated planning agency (DPA) authorized to conduct section 1122 reviews within the state of Nebraska. The Department of Health was designated as the appropriate appeal and hearing agency.

The federal rules implementing section 1122 became effective on December 13, 1973. However, the Nebraska standards and rules for implementing such reviews, promulgated within Rule 34 of the Nebraska Department of Health, did not become effective until December 16, 1978, nearly six years after the date of the section 1122 agreement with the state.

On March 28, 1972, the First Federal Savings and Loan Association of Lincoln (First Federal) made a loan commitment in the amount of $543,750 to the Davenport Construction Company for the construction of a nursing home facility to be built in Falls City, Nebraska. The loan was secured, in part, by a first mortgage on the property and a further security interest in certain furniture and fixtures. Construction of the facility was initiated in May 1972, and completed at an estimated appraised value of $725,000, exclusive of furniture and fixtures, on November 10, 1972, when ownership was then transferred to the Falls City Care Corporation. The facility was opened on November 30, 1972, and operated as a state-licensed, intermediate care facility until June 1, 1977, when it was closed.[5] Thereafter, in lieu of foreclosure of its mortgage, the outstanding principal balance of which was $518,274.77, First Federal acquired title to the facility on December 12, 1977.[6]

In early October 1978, First Federal contacted the defendants through the Section of Hospital and Medical Facilities of the Nebraska Department of Health concerning the reopening of the facility and subsequently submitted a formal health care proposal on October 16, 1978. However, after preliminary review and revision, First Federal was ultimately notified in a letter from the DPA dated January 5, 1979, that its health care proposal was not in conformance with the standards, criteria or plans developed pursuant to section 1122.

As a result of this notification of nonconformity, a public hearing was held on March 14, 1979, before the Appeal Hearing Board of the State Board of Health. Through a letter dated April 25, 1979, First Federal was notified of the Appeal Board's decision to affirm the recommendation of nonconformity issued by the Section of Hospital and Medical Facilities:

> because of the failure of [the proposal] to demonstrate sufficient evidence that the project [was] needed or projected as necessary to meet the needs of the community in terms of health services required * * *.

The Secretary was thereafter notified of the DPA's recommendation that the amounts attributable to capital expenditures of $514,000 incurred by First Federal be excluded from the capital reimbursement provisions of section 1122. This action was then filed by First Federal on May 23, 1979. On June 5, 1979, the Secretary determined that $514,000 expended in reopening the facility would be excluded from

---

**5.** During this initial period of operation, the facility received federal Medicare and Medicaid capital reimbursement based upon a $725,000 capital expenditure.

**6.** Since acquisition of legal title by First Federal, capital expenditures of less than $30,000 have been incurred for the facility.

section 1122 reimbursement for capital expenditures.[7]

First Federal's complaint alleged violations of both constitutional and federal statutory rights. Specifically, First Federal alleged, *inter alia*, that, in accordance with sections 84–905.01[8] and 84–906[9] of the Nebraska Revised Statutes, the defendants were without power to act upon the health care capital expenditure proposal until December 16, 1978, due to their failure to have adopted administrative rules, standards, criteria or plans for evaluating health care proposals and, therefore, the defendants' action upon the proposal represented an unconstitutional deprivation of First Federal's civil and property rights in federal reimbursements without due process of law. Furthermore, First Federal alleged that the defendants' conduct violated its federal statutory right under section 1122 to receive capital expenditure reimbursement. After receiving briefs and oral arguments,

on February 6, 1981, the district court issued an order and memorandum which permanently enjoined the defendants from submitting a finding to the Secretary that First Federal's health care proposal was not in conformance with the provisions of section 1122. Additionally, the court directed the defendants to notify the Secretary that the health care proposal was, in fact, in conformity with the provisions of section 1122 and that the earlier, contrary notice of nonconformity should be considered void and withdrawn.[10]

## II.

On appeal, the defendants argue that: (1) section 1122 precludes judicial review of state administrative health care reviews; (2) First Federal was not prejudiced nor denied due process or equal protection by the reviewing procedure instituted by the DPA; and (3) the action is nonetheless barred by the Eleventh Amendment.[11]

7. Had First Federal's proposal been deemed subject to § 1122 reimbursement, the expected recoupment over the life of the facility would have exceeded $200,000.

8. A copy of each amendment or rule to be adopted under this act, prior to the date of filing with the Secretary of State and the Revisor of Regulations, shall be submitted to the Attorney General for his consideration as to the statutory authority and constitutionality of such amendment or rule, and his approval or disapproval thereof. If the amendment or rule to be filed is approved as to legality by the Attorney General, he shall so indicate with his stamp of approval which shall be dated and signed.

Neb.Rev.Stat. § 84–905.01 (1976).

9. No rule of any agency shall be valid as against any person until five days after such rule has been filed with the Revisor of Regulations. No rule required under this act to be filed with the Secretary of State and Revisor of Regulations shall remain valid as against any person until the certified copy of the rule shall have been so filed on the date designated and in the form prescribed by the Revisor of Regulations. The filing of any rule as herein provided shall give rise to a rebuttable presumption that it was duly and legally adopted.

Neb.Rev.Stat. § 84–906 (1976).

10. IT IS ORDERED AND ADJUDGED:
1. That judgment be and hereby is entered declaring that the defendants have been and

are without authority to submit and are permanently enjoined from submitting a finding to the Secretary of Health and Human Services that the plaintiff's health project proposal for the reopening of a health care facility, which proposal was delivered on October 16, 1978, to the Division of Hospital and Medical Facilities of the Department of Health of the State of Nebraska, is not in conformity with the provisions of 42 U.S.C. § 1320a–1, § 1122 of the Social Security Act;
2. That the defendants shall submit to the Secretary of Health and Human Services a finding that the plaintiff's health project proposal is in conformity with the provisions of 42 U.S.C. § 1320a–1, § 1122 of the Social Security Act, and advise the Secretary that the notice of nonconformity dated May 24, 1979, should be considered withdrawn and void; * * *.

*First Federal Savings & Loan v. Casari*, No. CV79–L–132 (D.Neb. Feb. 9, 1981) (order accompanying memorandum of decision).

11. First Federal's complaint was brought under 28 U.S.C. § 1331(a) (1976). Accordingly, the defendants further argue that subject matter jurisdiction is lacking in this case because the district court's decision was founded upon an interpretation of state law and, as a result, no federal question is presented. We need not dwell on this issue, for the complaint explicitly alleged both federal *constitutional* and statutory violations of a not insubstantial nature.

While we express no opinion as to whether the complaint presented a federal question

Defendants' argument that section 1122 precludes judicial review is premised substantially on the language of subsection (f) of the statute, 42 U.S.C. § 1320a–1(f) (1976), which states that "[a] determination by the Secretary * * * shall not be subject to administrative or judicial review." They argue essentially that inasmuch as the Secretary's final section 1122 decision is not subject to judicial review, it would be anomalous and improvident to allow judicial review of an intermediate state DPA recommendation.

This argument is not without substantial support. In *Wilmington United Neighborhoods v. United States Department of Health, Education and Welfare*, 615 F.2d 112 (3d Cir.), *cert. denied*, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980), the Court of Appeals for the Third Circuit, over the strong dissent of Judge Adams, held that while section 1122(f) does not *expressly* preclude judicial review of DPA determinations, such nonreviewability could be inferred from the statute's purpose and legislative history. *Id.* at 119–21.

The court in *Wilmington* founded its holding of nonreviewability upon consideration of the dual congressional intentions to limit federal reimbursements of health care capital expenditures to those " '*deemed necessary by the state*' and to encourage 'rational health planning *by the states.*' " *Id.* (quoting *NAACP v. Medical Center, Inc.*, 584 F.2d 619, 627–28 (3d Cir. 1978) (emphasis in original)). Further, the court cited

the legislative history of the act as evincing a congressional desire to not disturb the autonomy of state planning agencies. *Wilmington United Neighborhoods v. United States Department of Health, Education and Welfare, supra*, 615 F.2d at 120 (citing H.R.Rep. No. 231, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin. News, 4989, 5066). Reasoning that allowing judicial review of DPA determinations was the surest way to disturb this goal of state autonomy, the court declined to grant such review. *Wilmington United Neighborhoods v. United States Department of Health, Education and Welfare, supra*, 615 F.2d at 120.[12]

In response, First Federal distinguishes the *Wilmington* opinion in that the court's holding therein as to the nonreviewability of DPA determinations can be narrowly limited to *substantive* versus *procedural* challenges to DPA determinations. Characterizing the instant challenge as one going to the power of the DPA to make its determination rather than the actual substantive determination itself, First Federal argues that *Wilmington* is inapplicable here.

We agree with First Federal that DPA determinations are subject to judicial review regarding issues of procedural propriety and, therefore, find the *Wilmington* opinion distinguishable on that basis. *See Hollingsworth v. Harris*, 608 F.2d 1026 (5th Cir. 1979) (per curiam). In *Hollingsworth*, an adverse section 1122 determination of

through its allegation of federal statutory violations, we find that the allegations of an unconstitutional denial of due process rather clearly presented a substantial, non-frivolous question arising under the Constitution. *See, e.g., Bell v. Hood*, 327 U.S. 678, 683–85, 66 S.Ct. 773, 776–77, 90 L.Ed. 939 (1946). Although the district court was required to look to state law to ascertain whether the defendants were within their power to act upon First Federal's health care proposal, resolution of that issue did not preclude further inquiry as to whether the defendants' unauthorized review of the proposal violated the constitutional guarantees of due process and equal protection.

**12.** In further support of this holding, the court in *Wilmington* quoted the consonant reasoning of the lower court in that case:

Given the prohibition on judicial review of the Secretary's decision set forth in Section 1122(f), it is inconceivable that Congress could have intended the Federal Judiciary to play a more active role than the Secretary by reviewing under any standard the substance of the DPA's approval of a proposed capital expenditure.

*Wilmington United Neighborhoods v. United States Dept. of Health, Educ. & Welfare*, 615 F.2d 112, 120 (3d Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980), (quoting *Wilmington United Neighborhoods v. United States Dept. of Health, Educ. & Welfare*, 458 F.Supp. 628, 641 (D.Del.1978)).

the *Secretary* was challenged on procedural grounds for failure to provide public notice in accordance with 42 C.F.R. § 100.106(c) (1980). Despite the explicit statutory admonition of section 1122(f) that the decisions of the Secretary were not subject to judicial review, the Fifth Circuit held that such determinations were nonetheless judicially reviewable for procedural questions. *Hollingsworth v. Harris, supra,* 608 F.2d at 1027. As noted by the court, even where otherwise withdrawn, judicial review of administrative agency determinations is always available to assure agency compliance with internal procedures. *Id.* (citing *Graham v. Caston,* 568 F.2d 1092, 1097 (5th Cir. 1978)).[13] We think that this rationale is equally applicable to the procedural review of DPA actions.

Furthermore, the *Hollingsworth* opinion provides additional support for our holding, for in that case, the Fifth Circuit granted judicial review in the face of the explicit language of section 1122(f). Here, not only is there a glaring absence of statutory language in point, but the federal regulations adopted pursuant to the statute clearly imply that DPA determinations are *not* subject to the constraints of section 1122(f). *See* 42 C.F.R. § 100.106(c)(4) (1980).[14] Judicial reviewability will only be denied upon a "clear and convincing" showing of legislative intent. *Barlow v. Collins,* 397 U.S. 159, 167, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970). Inasmuch as such a showing is absent with respect to the decisions of the DPA, we therefore hold that under section 1122, procedural challenges to the exercise of power by DPA's are subject to judicial review.[15]

■ First Federal's challenge herein is that the defendants were entirely without power to act upon their claim because of their failure to have regulations in effect at the time the proposal was submitted. No claim is made that the substance of the local standards or review conducted thereunder was incorrect. The challenge is one going directly to the *power* of the DPA to act and, therefore, procedural in nature. As such, it falls within the purview of the class of DPA orders subject to review.

■ The defendants further argue that despite their failure to have local rules and regulations in effect as required by the Nebraska Administrative Procedures Act, First Federal was not prejudiced by the DPA review of its proposal because the standards employed in the ultimate review were identical to those earlier promulgated in the federal regulations. This argument misses the point of First Federal's challenge. Section 84–906 explicitly states that "[n]o rule * * * shall be valid as against any person * * *" unless appropriately registered and filed. Neb.Rev.Stat. § 84–906

---

**13.** In *Graham v. Caston,* 568 F.2d 1092, 1097 (5th Cir. 1978), the court held that "judicial review is available where [an] administrative agency fails to follow procedures outlined in regulations adopted by that administrative agency." *See also East Oakland-Fruitvale Planning Council v. Rumsfeld,* 471 F.2d 524, 534 (9th Cir. 1972).

**14.** Any decision of a hearing officer, arrived at in accordance with this paragraph, shall, to the extent that it reverses or revises the findings or recommendations of the designated planning agency, supersede the findings and recommendations of the designated planning agency: *Provided, That where judicial review of such decision is obtained, the final decision of the reviewing court, to the extent that it modifies the findings and recommendations of the designated planning agency, shall to such extent supersede the findings and recommendations of the designated planning agency.*

42 C.F.R. § 100.106(c)(4) (1980) (emphasis added).

**15.** We recognize that *Wilmington United Neighborhoods v. United States Dept. of Health, Educ. & Welfare, supra,* 615 F.2d at 118, rejected a similar "substance versus procedure" challenge to the *Secretary's* § 1122 determination and therefore may arguably conflict with our decision herein. Application of that portion of the *Wilmington* reasoning to the challenge presented in this case, however, appears to represent an attenuated assertion of mere dicta. Even though the *Wilmington* opinion may support the defendants' argument refuting even procedural review of DPA determinations, we adhere to our decision on this issue.

In so holding, however, we express no opinion as to whether § 1122 provides for substantive judicial review of DPA determinations.

(1976) (emphasis added). *See* n.9, *supra.* First Federal made its loan commitment on March 28, 1972. It acquired title to the facility on December 12, 1977, and the subject health care proposal was formally submitted on October 16, 1978. Yet, it was not until December 16, 1978, that Rule 34 of the Nebraska Department of Health, implementing section 1122 reviews within Nebraska, was effectuated. Rule 34 was therefore invalid with respect to First Federal and the defendants were without authority to review the proposal.[16]

Section 1122 further requires that a health project proposal be submitted sixty days prior to incurring the obligation for capital expenditure. 42 U.S.C. § 1320a–1(d)(1)(A) (1976 & Supp. II 1978). Failure to comply with this requirement can result in partial or total exclusion of otherwise reimbursable amounts. *Id.* Whether First Federal's obligation is interpreted as having been incurred in 1972, with the loan commitment or on December 12, 1977, when ownership interest in the facility was acquired, no applicable rules were in effect to encompass review of the subject proposal. We agree with the district court that this failure to have promulgated appropriate rules, as required by both statute and regulation, further prevented the defendants from acting upon First Federal's proposal. The defendants' subsequent conduct in nevertheless reviewing the proposal was entirely without authority, arbitrary and patently prejudicial to First Federal, therefore representing a clear denial of due process of law. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).

So determined, it follows that the defendants, being powerless to act upon First Federal's proposal, were also powerless to substantively approve the proposal. As a result, we agree with the district court that the defendants' determination of nonconformity was void and a nullity and thus must be withdrawn. We cannot, for the same reasons, agree with that portion of the court's order affirmatively directing the defendants to notify the Secretary that the proposal was in fact in conformance with the provisions of section 1122. Lacking authority to review the proposal in any manner, the defendants could logically assess neither conformance nor nonconformance. Accordingly, the order below is reversed insofar as it directs the defendants to make an affirmative finding and notification of conformity.[17]

Affirmed in part, reversed in part.

**16.** The rule was not "appropriately registered and filed" and thus the DPA had no authority to conduct section 1122 review until December 16, 1979. The DPA dealt with First Federal as if it had the authority to conduct such a review when First Federal made the initial contact relative to reopening the nursing home, when the health project proposal was officially submitted, and when it requested and received more information concerning First Federal's application. At all of these times the DPA acted without authority. We agree with the district court that "[w]ithout having properly promulgated the procedures required by § 1122, the designated planning agency was without power to act in relation to the plaintiffs' application." *First Federal Savings & Loan v. Casari,* No. CV79–L–132, slip op. at 6 (D.Neb. Feb. 9, 1981).

**17.** Having so reversed in part and affirmed in part the judgment of the district court, it is clear that this action is not barred by the proscriptions of the Eleventh Amendment. As established in *Quern v. Jordan,* 440 U.S. 332, 348–49, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979), the Eleventh Amendment does not bar the imposition of a notice requirement which is merely ancillary to prospective or declaratory relief already ordered by the court and which does not require a retroactive payment of funds from the state treasury. The notice imposed by the district court below does not trigger any of the impermissible concerns reached by the amendment. It gives nothing more to the Secretary "'than what [he] would have gathered by sitting in the courtroom.'" *Id.* at 349, 99 S.Ct. at 1149 (quoting *Jordan v. Trainor,* 563 F.2d 873, 877–78 (7th Cir. 1977)).