Helen RICKARDS et al., Plaintiffs,

v.

Dr. Neil SOLOMON, Secretary of Health & Mental Hygiene, et al., Defendants.

Civ. A. No. M–77–1025.

United States District Court, D. Maryland.

July 19, 1978.

Philip W. Moore, Easton, Md., and James J. Lyko, and James W. Rourke, Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen., and Louise T. Keelty, Asst. Atty. Gen., Baltimore, Md., for defendant Dr. Neil Solomon.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

Pending before the court are the default of defendant Caroline Nursing Home (Paper 13–15), the renewed motion of defendant Secretary of the Maryland Department of Health and Mental Hygiene to dismiss on grounds of mootness (Paper 35), the motions of plaintiffs Mr. and Mrs. Rickards to certify them as representatives of a plaintiff class (Paper 9) and to send notice of this action to absent potential class members (Paper 32), and the cross motions for summary judgment on the merits by plaintiffs (Paper 8) and defendant Secretary (Paper 21).

## FACTS

The plaintiffs, an institutionalized recipient of state medicaid benefits (Mr. Rickards) and his spouse (Mrs. Rickards), on behalf of themselves and about 118 couples,

brought this § 1983 action for declaratory and injunctive relief[1] on June 27, 1977 against the State Secretary of Health in order to challenge the state's practice of attributing the income of the spouse to the institutionalized medicaid applicant or recipient for purposes of determining the applicant's eligibility and level of benefits under the medicaid program.

Although the complaint raises Due Process and other constitutional issues, the only ground pressed by plaintiffs is that the state's "deeming" practice is inconsistent with the federal medicaid statute, Title XIX of the Social Security Act, *as amended,* 42 U.S.C. § 1396 *et seq.,* and the federal medicaid regulations, 45 C.F.R. § 248.3 (1976), *as amended,* 42 Fed.Reg. 2684–2688 (Jan. 13, 1977) (effective date April 13, 1977).[2]

The complaint alleges that the "deeming" practice was mandated by state medicaid regulations in effect from October 1, 1976 to August 15, 1977. These regulations were codified at COMAR §§ 10.09.09–10.09.10, PX C. Effective August 15, 1977, the previous regulations were replaced with the current ·state medicaid regulations. *See* 4 Md.Reg. 1203–1205 (Aug. 3, 1977) (promulgating emergency regulations), Paper 10, Ex. A; 4 Md.Reg. 1495–1496 (Sept. 14, 1977) (proposed permanent regulation), DX B; 4 Md.Reg. 1805–1806 (Nov. 18, 1977) (Permanent regulation adopted) DX C. These regulations are now codified at COMAR §§ 10.09.09–10.09.11. These new state regulations discontinue the "deeming" practice effective August 15, 1977, although some administrative delay was foreseen. *See* DX D (procedure to correct all outstanding benefits schedules), DX E (progress report).

The state urges, and the plaintiffs do not dispute, that the current state regulations as effective August 15, 1977, are consistent with the current federal regulations as effective April 13, 1977.

---

1. Apparently because of the Eleventh Amendment and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), plaintiffs do not seek monetary relief from this court against the Secretary.

2. The amendments to 45 C.F.R. § 248.3 (1976) published on January 13, 1977, were effective April 13, 1977. *See* 42 Fed.Reg. at 2688.

In a previous Memorandum and Order (Paper 16) denying defendant Secretary's first motion to dismiss, this court considered whether a case and controversy existed under the then existing circumstances. Plaintiff Mrs. Rickards, the spouse of the medicaid recipient, had been billed by the nursing home for a balance due for the period October 1, 1976 to May 18, 1977 of $1,500. PX F. The charges were accrued under the challenged regulation which required that some of Mrs. Rickards' income be deemed available for payment of Mr. Rickards' medical expenses. Mr. and Mrs. Rickards' position was and is that these charges are the legal obligation of the State Secretary of Health rather than themselves. Although the nursing home had not at that time been made a defendant herein, its submission of a statement to the plaintiffs implied a belief that the plaintiffs were obligated for the amount billed. Although the defendant State Secretary of Health had rescinded the challenged regulation effective August 15, 1977, he did not make the recission retroactively effective to April 13, 1977, the effective date of the current federal regulation, or to October 1, 1976, the effective date of the challenged regulation. One implication of these actions was that the plaintiffs, Mr. and Mrs. Rickards, were responsible for the charges accrued as a result of the challenged regulation; another implication was that the nursing home should absorb the charges. Three injuries to the named plaintiffs and possibly to the class were identified: (1) the present claim by nursing homes of outstanding and unpaid amounts accrued under the "deeming" practice, (2) the present possibility of eviction of the plaintiffs for nonpayment, and (3) the present claim of the plaintiffs for monies previously paid to nursing homes under the "deeming" practice.

Under those circumstances there was an actual controversy among the plaintiffs, the nursing home, and the Secretary as to the responsibility for payment of the moneys billed to Mr. and Mrs. Rickards as a result of the challenged and now rescinded regulation. See Diffenderfer v. Central Baptist Church, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) (per curiam); Cox v. Stanton, 529 F.2d 47 (4th Cir. 1975).

The Court concluded at that time that an essential party was not before the Court, namely, the nursing homes that would be affected by whatever the decision was. Efforts were made by the plaintiffs to bring in a nursing home trade association as a class representative, but the effort was fruitless insofar as the class was concerned. There is now before the Court only Caroline Nursing Home—the home directly involved in the claim of the named plaintiffs. Caroline Nursing Home, however, has defaulted, apparently electing to lose its claim against plaintiffs for money due under the former "deeming" formula, if valid, and also to lose the money previously paid to it by plaintiffs under the former "deeming" practice. Since Caroline Nursing Home, with which the plaintiffs were involved, has defaulted, it certainly could not be certified as a defendant class representative, if for no other reason, because it would not meet the requirements of Rule 23 of the Federal Rules of Procedure that it be an adequate representative of the class interests.

At this time two circumstances influence the court. First, the named plaintiffs Mr. and Mrs. Rickards are now entitled to full relief from the Caroline Nursing Home. Second, if they occur, the present and future consequences to the putative class plaintiffs of the defendant Secretary's allegedly illegal past and discontinued "deeming" practice will occur, not by the direct act of the Secretary, but instead by the act of the nursing homes, which are not, so far as this record discloses, required by the Secretary to take any particular action in reference to these circumstances. The nursing homes have the right to elect not to attempt to collect monies which might be due them from the nursed medicaid beneficiary patients, if the "deeming" practice is valid. They also have the independent right to determine whether to attempt to evict a patient or, for that matter, whether to repay to a patient money which has already been paid to them. In short, there is the action of an independent third party

in the chain of actors required to produce the feared consequences of the past action of the Secretary's "deeming" practice.

## DISCUSSION

In the present state of this case, two courses have been suggested and seriously considered by the Court in order to reach the merits of the question of the legality or lack thereof of the "deeming" practice:

### I

The first is to attempt under the provisions of Local Rule 20 and F.R.Civ.P. 23(d) to locate under Court supervision additional named party class representatives to alleviate the apparent problem that the claim of the Rickards, under present circumstances, is moot. Such procedure would also remedy the other deficiency looming in this case— the lack of a representative of the defendant nursing home class.

In other circumstances the Court has approved such action, and I presently believed, as I did then, that under appropriate circumstances such action is authorized by existing rules and law. *E. g., Byrd v. Local 24,* 14 E.P.D. § 7761 (D.Md.1977). In the other cases the claim of the named class representative was not moot and there was a continuing alleged wrongful action being committed by the defendant, the difficulty being that for some other reason the named class representative was not an adequate one within the requirements of Rule 23.

█ This case, however, differs because it appears that under the unusual circumstances here, the claim or claims of the named plaintiffs are moot and that the allegedly illegal "deeming" practice of the Secretary has ceased. Under these circumstances, the Court does not believe it appropriate for it, in effect, to seek out parties to maintain this suit either as plaintiffs or as defendants, and believes that it is up to the individuals who are aggrieved, if there are any, to come forward and seek to protect their interests in a court of law.

### II

The second route to the merits of plaintiffs' legal claim depends on whether this case now presents a case or controversy and on whether under the Eleventh Amendment [3] a federal court has jurisdiction to enjoin a state officer who has violated federal law in the past but who has now discontinued the violation to notify the potential victims (1) of the unlawfulness of his past conduct and (2) of potentially available state remedies for recoupment of the victim's money. Such injunctive notice type relief was approved in *Jordan v. Trainor,* 563 F.2d 873 (7th Cir. 1977) (en banc), cert. *granted sub nom., Quern v. Jordan,* 435 U.S. 904, 98 S.Ct. 1447, 55 L.Ed.2d 494 (1978), but it was disapproved by one judge in *Fanty v. Pennsylvania Department of Public Welfare,* 551 F.2d 2 (3d Cir. 1977), *pet. cert. filed sub nom., Randle v. Beal* (No. 76–6853) (June 3, 1978), *amicus curiae brief by United States invited,* 434 U.S. 811, 98 S.Ct. 48, 54 L.Ed.2d 68 (1977), *still pending* (July 12, 1978).

Following that route in this case would require, first that this Court defer entering a default judgment against the Caroline Nursing Home, thereby preventing the named plaintiffs' claim from becoming moot insofar as the legality of the state's action is concerned; secondly, that this Court certify the named plaintiffs as representatives of a class; thirdly that it adjudicate and declare, on the merits, the legality or illegality of the "deeming" practice; and lastly, that it by injunction require the defendant Secretary to send a notice to members of the plaintiff class (and perhaps nursing homes) potentially affected by the decree informing them of the illegality of the "deeming" practice and of potential state administrative and judicial remedies for recoupment of their money or other relief.

There are two difficulties with this proposal: (a) the doubtful basis for federal

---

3. The effect of the Eleventh Amendment was not raised or decided in this Court's previous decisions.

jurisdiction premised on the deferral of the entry of default and (b) the possible Eleventh Amendment bar to injunctive notice relief.

### A. Deferring Default

■ Since the twentieth day after defendant Caroline Nursing Home was served, named plaintiffs Mr. and Mrs. Rickards have been entitled to entry of a default by the clerk, F.R.Civ.P. 55(a), and, upon application, to judgment by default to be entered by the court, F.R.Civ.P. 55(b). Complete relief to the named plaintiffs is available without an adjudication of the federal statutory and constitutional issues, although some evidence may be needed to update and fix the precise amounts of money involved. F.R.Civ.P. 55(b)(2). In the circumstances here, where the named plaintiffs are already entitled to complete relief against the defendant nursing home (which has both their money and their "debt"), where the defendant Secretary has discontinued the allegedly illegal "deeming" practice, and where the named plaintiffs themselves need no notice of state remedies, it is doubtful whether the existence of a constitutionally required case or controversy may be maintained by the delay in entry of default, since the named plaintiffs' relief would not be expanded (indeed, it might be limited) by a decision on the merits and since a federal court has no power to decide a question that cannot affect the rights of litigants in the case before it. *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); *accord, Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). *Cf. e. g., Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978) (affirmance of default judgment on sufficiency of allegations of insolvency made it unnecessary to decide legal necessity of allegation).

Plaintiffs urge that the mootness problems in this case may be overcome by retroactive class certification, allowing the certification order to "relate back" to the June 27, 1978 date of the filing of this suit, at which time the Secretary's "deeming" practice persisted and would persist until August 15, 1978. Plaintiffs rely on a footnote from *Sosna v. Iowa,* 419 U.S. 393, 402 n.11, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and an extending gloss from *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), but they neglect the pruning language of *Kremens v. Bartley,* 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977).

In *Sosna,* the Supreme Court suggested in *dictum* :

"There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."

419 U.S. at 402 n.11, 95 S.Ct. at 559.

■ Preliminarily, it must be observed that unlike the hypothetical case in *Sosna's* footnote 11 this case did not become moot by the passage of time on the docket; instead, the case against defendant Solomon was moot on August 15, 1977, (effective date of the new regulation), at least three days before he was required to answer, and the case against defendant Caroline resolved itself when no answer was filed. Indeed, the Secretary had stopped the "deeming" practice approximately two months before plaintiffs moved for class certification. Moreover, there is no suggestion that the legal issue here will evade review; there are approximately 117 other couples who could present this issue on the merits to the proper forum.[4] Finally, even if *arguendo* this were a case for the "relation back" of the class certification, there is no nursing home defendant (present in court) against which the class has a claim.

---

4. If this claim were prosecuted in state court, the Eleventh Amendment would not bar retrospective monetary relief in favor of the medicaid patients or of the nursing home.

The plaintiffs urge that the hypothetical case described in *Sosna's* footnote 11 should be extended to include cases, like this one, where there is no claim that the legal issue will evade review, the plaintiffs interpreting *Franks v. Bowman Transportation Co., supra,* as virtually eliminating the evading review requirement. In *Franks,* however, the Supreme Court did not hold or even hint that the evading review exception to the mootness doctrine could be dispensed with in its *Sosna* footnote 11 hypothetical. The Court pointed out that the evading review cases were one exception to the mootness doctrine and that fundamental policies underlying the case and controversy limitation of Article III could create other exceptions to the mootness doctrine. *See* 424 U.S. at 753–754, 96 S.Ct. 1251, 1259–60. In *Franks,* the Court wrote:

> "There can be no question that this certified class action 'clearly presented' the District Court and the Court of Appeals 'with a case or controversy in every sense contemplated by Art. III of the Constitution.' *Sosna, supra,* 419 U.S. at 398, 95 S.Ct. 553, 42 L.Ed.2d, at 540. Those courts were presented with the seniority question 'in an adversary context and in a form historically viewed as capable of resolution through the judicial process.' *Flast [v. Cohen], supra,* 392 U.S. [83], at 95, 88 S.Ct. [1942], at 1950, 20 L.Ed.2d [947], at 958. The only constitutional mootness question is therefore whether, with regard to the seniority issues presented, 'a live controversy [remains] at the time this Court reviews the case.' *Sosna, supra,* 419 U.S. at 402, 95 S.Ct. 553.
>
> "The unnamed members of the class are entitled to the relief already afforded Lee, hiring and backpay, and thus to that extent have 'such a personal stake in the outcome of the controversy [whether they are also entitled to seniority relief] as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions.' *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678

(1962). Given a properly certified class action, *Sosna* contemplates that mootness turns on whether, in the specific circumstances of the given case at the time it is before this Court, an adversary relationship sufficient to fulfill this function exists."

424 U.S. at 755, 96 S.Ct. at 1260. *See also Kremens v. Bartley, supra,* 431 U.S. at 132–134, 97 S.Ct. 1709.

In this case, then, the question is whether, in the specific circumstances present here, there is an adversary relationship that assures the "concrete adverseness" which "sharpens the presentation of issues upon which the court . . . depends for illumination of difficult . . . questions." *Franks,* 424 U.S. at 755, 96 S.Ct. at 1260. Here one defendant, Caroline Nursing Home, has elected not to defend at all, eliminating any concrete adverseness on its part relating to the issue of the validity of the "deeming" practice. The defendant Dr. Solomon has vigorously defended this regulation, but he has just as vigorously pointed out that no prospective relief against him is available because he has rescinded the regulation under attack and that no retroactive relief in the form of money is sought in view of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Finally, there are no other defendants, and no class has been certified as there had been in *Sosna* and *Franks.*

Under these circumstances, while the potential claims of the possible class members are not so moribund as to be called moot in theory, in practice the potential claims of the putative class members are not now present in this case. The named plaintiffs are no longer class members (they've got their money) in a position to go forward with the class claim.

■ For these reasons the claim of Mr. and Mrs. Rickards and this case do not supply the necessary "concrete adverseness" in the present circumstances for purposes of adjudicating the lawfulness of the defendant Secretary's discontinued "deeming" practice. *Kremens v. Bartley, supra; Indi-*

*anapolis School Comm'rs. v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

### B. Injunctive Notice Relief and Federalism

Consideration of plaintiffs' argument that the possibility of requiring the Secretary by injunction to notify the potential victims of his unlawful past conduct and of available state remedies (if indeed his "deeming" practice were unlawful) can, without doing violence to the concept of federalism and the strictures of the Eleventh Amendment, be the basis for a case and controversy here requires a review of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); and *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (*Milliken II*).

In *Ex parte Young,* the Attorney General of Minnesota had been found in contempt for initiating state court suits to enforce state railroad rate legislation which the lower federal court had found unconstitutional and whose enforcement had been enjoined. His petitions for writs of habeas corpus and *certiorari,* on the ground, *inter alia,* of the Eleventh Amendment's jurisdictional bar were dismissed as the Supreme Court reviewed its prior cases and held that a federal court may enjoin a state officer to conform the future conduct of his office to the requirements of the Constitution. The Court wrote:

"[I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."

209 U.S. at 155–156, 28 S.Ct. at 452. This conclusion was reached and explained by reliance on the dichotomy between the individual who is the defendant and the state office that he holds:

"If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

*Id.* at 159–160, 28 S.Ct. at 454.

The difficulty in applying this dichotomy between the individual who is the defendant and the office he holds is illustrated instructively by *Edelman v. Jordan* and *Milliken II.* Notwithstanding its characterization as equitable restitution for wrongfully withheld benefits for the aged, blind and disabled, the relief in *Edelman v. Jordan* was barred by the Eleventh Amendment, because, as a practical matter, the funds to satisfy the award came from the state, 415 U.S. at 651–652, 94 S.Ct. 1347, and because the award compensated the victims there for a monetary loss resulting from a past unlawful practice that had been halted by the same decree's prospective order to conform to federal law, *id.* at 666–669, 94 S.Ct. 1347. In particular, the Supreme Court wrote:

"[T]hat portion of the District Court's decree which petitioner challenges on Eleventh Amendment grounds goes much further than any of the cases cited. It requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard. While the Court of Appeals described this retroactive award of monetary relief as a form of 'equitable restitution,' it is in practical effect indistinguishable in many aspects from an award of damages against the State. It

will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. *It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials."* Id. at 668, 94 S.Ct. at 1358 (emphasis added).

In contrast, in *Milliken II,* where the state defendants "acted directly to control and maintain the pattern of segregation in the Detroit schools," 433 U.S. at 269 n.1, 97 S.Ct. at 2752, the decree ordered the state defendants to pay one-half the future costs of court ordered programs in reading, teacher training, student testing, and student counseling. New programs were necessary because the old testing and counseling programs were themselves discriminatory and the new reading and training programs were *"essential"* to the success of the court ordered plan. *Id.* at 274–276, 97 S.Ct. 2749. The Supreme Court concluded that this order did no more than to enjoin state officials to conform their conduct to the requirements of federal law and to pay the costs necessary to do so. *Id.* at 289–290, 97 S.Ct. 2749. The Court's subsequent discussion of the "compensatory" nature of the Court ordered programs, contrary to the plaintiffs' contention here, did not hint at a new exception to the Eleventh Amendment or an enlargement of *Ex parte Young.* Rather the Court observed that these "compensatory" programs were entirely unlike the improper " 'award of an *accrued* monetary liability . . .' which represented 'retroactive payments.' " *Id.* at 289, 97 S.Ct. at 2761, quoting *Edelman v. Jordan* (emphasis in original). The Court concluded that such " 'compensatory' " nature of the programs did not make the enforced partial subsidization of them by the State run afoul of the Eleventh Amendment given that the programs were "part of a plan that operate[d] *prospectively* . . .," 433 U.S. at 290, 97 S.Ct. at 2762.

■ *Edelman v. Jordan, Milliken II,* and the precedents reviewed therein, teach that the Eleventh Amendment bars the use of an accrued monetary liability (payable from a state's treasury), as a measure of federal court relief against state officials, irrespective of whether that accrued monetary liability is described in terms of damages or of equitable restitution. They also teach that, on the other hand, the Eleventh Amendment does not prohibit the entry by a federal court of injunctive relief in a decree which is planned to eliminate present conduct by state officers found on the merits to be violating federal law, even though the operation of the decree may cause ancillary and subordinate expense to a state's treasury.

■ Applying these teachings to the present case, this court concludes that in the present case proposed injunctive notice relief is not permitted by the Eleventh Amendment. First, this court observes that the defendant Maryland Secretary of Health and Mental Hygiene has discontinued his allegedly illegal "deeming" practice. There is *no present unlawful conduct* which a decree could eliminate. *A fortiori* no expense to the state treasury could be ancillary to the decree's elimination of the unlawful conduct. Second, a decision on the merits of plaintiffs challenge to the discontinued "deeming" practice, if favorable to the plaintiffs, will be pressed on the Secretary (via *res adjudicata,* collateral estoppel or a related doctrine) as determinative of his accrued monetary liability for his wrongful withholding *in the past* of medicaid benefits. The sole substantive result of this federal court's adjudication of the plaintiffs' claim would be its use by *res adjudicata* or related doctrine in a subsequent state court [5] proceeding.

A comparison of this case to *Jordan v. Trainor, supra,* the Seventh Circuit's decision approving notice relief, discloses one

---

**5.** In this case plaintiffs might proceed in state court under a contract theory, *Md.Ann.Code* art. 41, § 10A (1978 Repl. Vol.) or perhaps under 42 U.S.C. § 1983, *e. g., Williams v. Hor-* *vath,* 16 Cal.3d 834, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976). And of course, an adverse administrative decision of the Secretary would likely be subject to state judicial review.

significant difference between the two. Here, the Secretary, without any court order, has discontinued his allegedly illegal "deeming" practice, whereas in *Jordan v. Trainor* the notice relief, albeit belated due to the intervening appeals, was part of a federal court decree planned to eliminate the then present conduct by the state officer found on the merits to violate federal law. This posture in *Jordan v. Trainor* may *arguendo* alleviate the Eleventh Amendment jurisdictional limitations so prominent in the present case. The difference in circumstances between *Jordan v. Trainor* and the present case also highlight the discussion in Part IIA hereof in that in the former case there was no doubt that a "live" controversy existed.

### III

The default of Caroline Nursing Home, Inc., shall be entered by the Clerk and a schedule set for the accounting. Amended Complaint Request for Relief ¶ 15, Paper 13.

The motion of the Secretary to dismiss will be granted. Although consideration has been given to keeping the Secretary in the case under F.R.Civ.P. 19 in the event that the nursing home should seek to be relieved of its default, this Court is persuaded that dismissal of the Secretary would be required, even in that event, by reason of the Eleventh Amendment, under the same rationale set out in Part IIB hereof.[6]

An appropriate order will be entered.

---

6. The Secretary could, on behalf of the State, waive the provisions of the Eleventh Amendment for the purposes of this case but that prospect appears unlikely at this time.